## PEOPLE v. ABBOTT.

### No. 20,985; October 10, 1893.

34 Pac. 500.

**Burglary—Possession of Stolen Property.**—In a burglary case it appeared that a Chinaman's trunk and pipe were stolen from the burglarized building. There was evidence that two persons carried a "China trunk" from the lot on which the building was situated about the time the crime was committed; that defendant and others were seen with such a trunk about that time; and that such Chinaman's trunk .was found open two days afterward, a considerable distance from the building. There was no evidence that a "China trunk" is any different from any other trunk. The pipe was put in evidence, but there was no testimony as to where it was found. Held, that the evidence did not justify an instruction as to the effect of possession of property recently stolen.

**Burglary.—It is Error to Charge That the Possession of** stolen property soon after the taking, while not sufficient to justify a con-

viction, is a "*guilty circumstance,*" and that defendant was bound to explain the possession in order to remove its effect.[1]

Criminal Trial—Misconduct of Judge.—Where a Witness for the State, in a criminal case, is absent when wanted, and is brought in by an officer, it is error for the court, in the presence of the jury, to hold a colloquy with such witness, which tends to discredit defendant and his counsel, and lead the jury to believe that, if they were not guilty of a grave offense in procuring the absence of the witness, they were, in the opinion of the court, capable of committing it, and that such conduct on their part could only be induced by consciousness of defendant's guilt.

APPEAL from Superior Court, Los Angeles County; B. N. Smith, Judge.

George Abbott was convicted of burglary and appeals. Reversed.

C. C. Stephens for appellant; Attorney General Hart for the people.

HAYNES, C.—An information charging Amos Abbott, George Abbott and Albert Acevedo with burglary, committed on the fifth day of September, 1891, in the room of one Ah Sic, in the city of Los Angeles, was filed by the district attorney. The defendants severed. Appellant George Abbott pleaded not guilty, was tried, found guilty by the jury, and sentenced to imprisonment for the term of five years. A motion for a new trial was made and denied, and from the judgment and the order denying a new trial defendant appeals.

A very large number of exceptions were taken by appellant upon the trial, and referred to in the brief of his counsel, but we regret to say that the brief gives us little aid beyond the mere reference to the folio in the transcript where the exceptions are found; and on the part of the people the brief by the attorney general, prepared and signed by his first deputy, is little more than a pert, if not impertinent, denial that there is anything of merit in the alleged errors referred to by appellant's counsel. Where the protection of the people against

---

[1] Cited in People v. Gibson, 16 Cal. App. 350, 116 Pac. 989, where the court says in effect that if this means that such would be error even if it was charged in addition that possession is not of itself sufficient evidence on which to convict "it must be deemed to be overruled."

crime upon the one side and the liberty of the citizens is at
stake upon the other, the questions involved are of such im-
portance as to require a careful examination and discussion
by counsel in order that just conclusions may be reached by
the court.   Ah Sic and Ah Poy, whose property is alleged to
have been burglariously stolen, were partners and proprietors
of a Chinese drug-store on Marchessault street, in the city of
Los Angeles.   In the rear of the room occupied as a drug-
store was a room used as a public reception-room.   To reach
this room persons passed from a door in the side of the drug-
store into a hall which extended back past two or three other
rooms to a kitchen, and from this hall was an entrance into
the room immediately in the rear of the drug-store.   The next
room in the rear of the reception-room was Ah Sic's sleeping-
room, in which the property alleged to have been stolen was
kept.   The testimony tends strongly to show that this recep-
tion-room was visited by many persons, of all colors and na-
tionalities, for the purpose, among other things, of purchasing
Chinese lottery tickets; and on the evening of September 5th
the defendant, with his brother and many other persons, were
in this room for a considerable time—how long will be here-
after noticed—but the room appears to have been open, and
different persons going to and coming from it from early in
the evening until the discovery of the alleged burglary, about
a quarter past 10 o'clock.   Between the storeroom and this
reception-room was a small glass window, through which one
in the drug-store could observe those in the reception-room,
and those in the reception-room could see those coming into
the storeroom.   The burglary was effected by boring through
a board partition between Ah Sic's room and an unoccupied
building near or adjoining that room so as to remove the boards
for a sufficient space to take out, through the opening, a trunk
which is said to have been stolen.   The only article, aside from
the trunk, shown to have been stolen, was an opium pipe,
which Ah Sic testified was on that evening lying upon his
bed in the same room.   In the trunk was some clothing, not
described in the evidence, a small bamboo basket containing
silver, and gold in a buckskin bag, amounting in all to some
seven or eight hundred dollars.   A Chinaman named Ah
Tung testified that a little after 10 o'clock the night of the
burglary he saw the defendant and another man carrying a

chest, coming out of Ah Sic's back yard, and saw them go out through the gate of the fence, but he did not know at that time of the burglary, and did not think there was anything wrong, but next morning learned it was "stealing." Pierce Boyle, a witness on the part of the prosecution, testified that he saw two men coming out of the gate from the Chinaman's back yard; that they went under a pepper tree, and put the box down there, and then blew a whistle on their fingers, and two more young men came up; and further testified in that connection: "Well, then I saw the other two young men come up round a big load of hay there in the middle of the street. They got the box, and I told them, 'Hello, boys; hold on there'; and I picked up a rock and throwed the rock after them, and then they blew a whistle. These two men had a box between them, running, sort of like a Chinaman's. They were what I would call trotting. They came with the box within fifteen feet of me. I measured it since. When I first saw them they were coming from the Chinaman's house." This witness did not identify any of the men he saw in connection with the box. This witness fixed the time of this transaction at "10 o'clock, or maybe a quarter past." Ah Ngau testified that he saw the defendant and three other men with a Chinese chest or trunk at the corner of Alameda street and the convent; that he was coming up from the old railroad depot toward Chinatown, and they were going toward the convent; that the defendant and another one with him was carrying the chest, and the other two followed two or three steps behind; that when he got to his room, about two blocks from where he met them, it was a quarter after 10; that he had been to a laundry near the old depot to see a friend. Ah Ging testified that he went to the old depot with a friend who was going to take the train for San Francisco; that they went a little after 10 o'clock to the depot. As he was going he saw the defendant and another whom he did not know carrying a chest. That he knew the two that were following by sight, but not their names. That where he saw them was between Alameda street and a small street running into it from the west, just opposite the lumber-mill. That they were crossing Alameda street, and he was going toward the depot. The burglary occurred Saturday night, and on Monday at noon the trunk or chest was found in a corn-field, down toward the river, a considerable distance

from the place of the burglary. The trunk had been broken open and the clothing scattered around. Neither the pipe nor any of the contents of the trunk were at any time found in the possession or in any manner connected with the defendant, and there was no evidence of his possession of the stolen property other than that above stated, namely, that he was seen with others carrying a box or chest, but there was no evidence tending to identify the box or chest which was carried with the one that was stolen, other than the circumstances above stated.

I have stated so much of the testimony for the purpose of showing the materiality of certain instructions given and refused upon the questions of identification of the defendant, and inferences to be drawn from the possession of stolen property. Upon the latter question the court, at the request of the district attorney, charged the jury as follows: "The mere possession of stolen property, unexplained by the defendant, however soon after the taking, is not sufficient to justify a conviction; it is merely a guilty circumstance, which, taken in connection with other testimony, is to determine the question of guilt. Yet if you believe from the evidence that the defendant was found in the possession of the property described in the evidence, or claiming to be the owner thereof, after the alleged burglary, this is a circumstance tending in some degree to show guilt, but not sufficient, standing alone and unsupported by other evidence, to warrant you in finding him guilty. There must be, in addition to proof of possession of property stolen from the premises described in evidence, proof of corroborating circumstances tending of themselves to establish guilt. These corroborating circumstances may consist of acts or conduct or declarations of the defendant, or any other circumstances tending to show the guilt of the accused. If the jury believe from the evidence the property mentioned in evidence was stolen from the premises described in evidence, and was seen in the possession of the defendant shortly after being stolen, the failure of the defendant to account for such possession or to show that such possession was honestly obtained, is a circumstance tending to show his guilt, and the accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the

evidence disclosed any such." Conceding, for the moment, that the instruction as given correctly stated the law as an abstract proposition, it was not applicable to the facts of the present case. Before a defendant can properly be called upon to account for the possession of stolen property, the circumstances must be such as would make silence as to such possession an evidence of guilt. Here the fact of possession was denied. The defendant could not explain his possession of the goods without admitting that he had possession. If he had been arrested with the trunk in his hands, and had been asked by the officer where and how he got it, he would have been called upon to speak, and his silence, if he refused to speak, as well as his answer, if false, would have been evidence against him. Defendant's alleged possession of the property depended upon a double identification: First, that the trunk or chest carried by the two men was the property stolen from Ah Sic; and, second, that defendant was one of the men who carried it. The only identification of the trunk was that the one found in the corn-field on Monday was the one taken from Ah Sic the Saturday night preceding, while the only evidence tending to identify the trunk carried by the men with the one found in the corn-field was that it was "a China trunk"; but there was no evidence that a China trunk is different from any other trunk. No other description was attempted by any of the witnesses who claimed to have seen the defendant helping to carry it. The pipe was produced in evidence, but there is no testimony from beginning to end as to where it was found. It was not in the trunk at the time of the burglary, and it is not probable that it would have been stolen from the bed, and carried to the corn-field, and left there with the broken trunk; nor was any part of the contents of the trunk found in possession of the defendant or in any manner accounted for. Nor was the identification of the defendant as one of the men who carried the trunk more satisfactory. The evidence of the Chinamen who testified that they recognized the defendant as one of the men who carried the trunk was not only open to serious doubt and criticism, but the evidence on the part of the defendant, if true, would seem to make it clear that the man identified by the Chinaman as the defendant could not have been the defendant. Wills, in his work on Circumstantial Evidence, sixth American from the

fourth London edition, page 63, in discussing the subject under consideration here, says: "The rule under discussion is occasionally attended with uncertainty in its application from the difficulty attendant upon the positive identification of articles of property alleged to have been stolen; and it clearly ought never to be applied where there is reasonable ground to conclude that the witnesses may be mistaken, or where from any other cause identity is not satisfactorily established."

In the cases cited at the end of the above quotation, it will be seen that the circumstances under which instructions similar to the above were given did not involve the uncertainties as to the identification of the property or of the person that were so prominent here. In People v. Gill, 45 Cal. 285, four horses were stolen during the night, and the next day the defendant was seen riding one of the horses, accompanied by another man, and the two had the four stolen horses with them. There seems to have been no question whatever as to identity made in the case. In People v. Clough, 59 Cal. 438, the defendant was charged with robbery. The person robbed immediately notified the chief of police, who made immediate pursuit, and captured the defendant within a few minutes after the robbery was committed. The property which had been taken from the prosecuting witness was found upon the defendant, and the only explanation he gave of such possession was that he had "picked up the watch." In People v. Velarde, 59 Cal. 457, the property alleged to have been stolen consisted of cattle, which were found in defendant's possession, who undertook to account for his possession and ownership. In such cases as these an instruction upon the subject of possession of the stolen property shortly after the alleged larceny is proper, but those cases are very different from the one at bar. I think, too, the matter of this instruction is subject to serious criticism. It states directly that the possession of stolen property soon after the taking, while not sufficient to justify a conviction, is "a guilty circumstance." In People v. Cline, 74 Cal. 575, 16 Pac. 391, the jury was instructed that "the mere possession of stolen property recently stolen is not of itself sufficient evidence to convict. The possession of stolen property, supported by other evidence tending to show guilt, is a strong circumstance tending to show

guilt." This court said, Searls, C. J., delivering the opinion: "It is not a question of law upon which the court should instruct the jury, but one of fact, which is wholly within the province of the latter. In deducing the ultimate fact of guilt or innocence, they are the sole judges of the weight to be given to the probative fact of possession of property recently stolen, and stamping the character of such possession." In the case of State v. Hodge, 50 N. H. 521, in discussing this question, the court said: "The resemblance between inconclusive presumptions 'of law and strong presumptions of fact cannot have escaped notice—the effect of which being to assume something as true until rebutted; and, indeed, in the Roman law and other systems where the decision of both law and fact is intrusted to a single judge, the distinction between them becomes in practice almost imperceptible; but it must never be lost sight of in the common law, where the functions of judge and jury should always be kept distinct. Unfortunately, however, the line of demarcation between the different species of presumptions has not always been observed with the requisite precision. We find the same presumption spoken of by judges, sometimes as a presumption of law, sometimes as a presumption of fact, sometimes as a presumption which juries should be advised to make, sometimes as one which it is obligatory on them to make. . . . . The law is burdened and obscured by a great mass of common opinion, general understanding, practice, precedent, and authority (including the presumption from possession of stolen property) that has passed for law, but is in truth not law, but fact, coming down to us largely by descent from the ancient custom of the judge giving the jury his opinion of the evidence. To clear the law of this encumbrance, revive elementary principles strictly legal in their nature, separate the province of the court from the province of the jury, and maintain the latter in its entirety, is a duty put upon us by the constitution. . . . . When, therefore, we have come to the conclusion that the presumption from possession of stolen goods is a presumption of fact, we find ourselves prohibited by the constitution from delivering to the jury the presumption as to a result binding upon them, or a rule by which they are to be governed." The statement, therefore, in the instruction that the possession of the property was a guilty circumstance, required

the jury to give weight to some extent to the fact of possession, and, with the further statement that the accused is bound to explain the possession in order to remove its effect, under the circumstances of this case, I think was error. It would have been proper for the court to have informed the jury that the possession of the property by the defendant, if they found as a fact that he had such possession, might be considered by them in connection with all the circumstances of the case, but not that they were bound, as the instruction implied, to give it some weight against the defendant, or that the defendant, if they found he had possession of the property, was placed under such circumstances as required him to account for that possession; for whether the circumstances were such as to require an explanation is itself a question of fact which the jury are authorized to determine, and was not a matter of law which they were bound to observe. The defendant was not apprehended with the property in his possession, and no circumstance transpired prior to the trial requiring him to speak at all in regard to his alleged possession of the trunk. If he had not gone upon the stand as a witness, no comment could be made to the jury upon his failure on that occasion to account for his possession of the property, and, that being true, his failure while upon the stand to give any account of a possession which he denied having is equally placed beyond comment either by the district attorney in his argument or by the court in its instructions to the jury.

Upon the trial, Pierce Doyle was called as a witness for the people. Upon being sworn, the following colloquy occurred between the court and the witness: "The Court: Why did you leave the courtroom? Answer. I though I could go down and get a drink and get back in time. Question. Did Mr. Stephens offer you any money to go away? A. No, sir; no one gave me none. Q. Did he tell you to go away? A. No, sir; he did not speak to me. Q. Did the defendant tell you to go away? A. No, sir. Q. Did the defendant offer to give you any money to go away? A. No, sir; no one did. The court, in the presence of the jury: This looks very singular, indeed." (Mr. Stephens was defendant's attorney.) The transcript contains the following explanation of this colloquy: "Amos Abbott, a witness and brother of defendant,

left suddenly for the Islands the day before this trial was called. A motion for continuance by defendant was based on such absence. Counsel for defendant refused to have the absent witness' testimony, which was complete and full, taken on former trial of same case, read in evidence, and persisted in his motion. The witness Doyle was wanted the night before, and was absent. He came into the courtroom before court called, and when wanted was absent, and an officer was sent to bring him in, and the court interrogated him as above.''

The affidavit for continuance above referred to was made by the defendant, and was sufficient in substance and in form. The fact that the witness had before testified, and that his testimony could be read, the prosecution assenting thereto, did not make it improper that a continuance should be applied for, even though it may have justified the court in refusing the motion. Whether the court erred in refusing the motion need not be considered, as the presence of the witness was procured, and the defendant was therefore not prejudiced by the denial of his motion. There was nothing, however, in that matter, nor in the absence of the witness Doyle, that could possibly justify the grave imputation against the defendant or his counsel implied in the above-quoted examination of the witness by the court. It inevitably tended to discredit both the defendant and his counsel, and to lead the jury to believe that if they were not guilty of a very grave offense against the administration of justice in procuring the absence of the witness, that they were, in the opinion of the court, at least capable of committing it, and that such conduct on their part could only be induced by a consciousness that defendant was guilty of the crime for which he was being tried. That this must have operated to the prejudice of the defendant throughout the trial is apparent, and for this reason, if no other, a new trial should be granted. No improper motive is attributed to the court in this matter, but if the circumstances were such as to impress the court with a grave suspicion that the witness had been tampered with, the investigation should not have been proceeded with in the presence of the jury, further than to inquire of the witness the cause of his absence. The judgment and order appealed from should be reversed and a new trial granted.

We concur: Temple, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

DE HAVEN, J.—I concur in the judgment.