## STATE OF IOWA V. JOE ALLEN, Appellant.

**Misconduct of Counsel:** OPENING STATEMENT. It is not reversable error for the attorney for the prosecution, in good faith, and with reasonable grounds to believe certain evidence admissible, to state to the jury, in his opening statement, the substance of such evidence, though, when offered, it is rejected.

MISCONDUCT OF COURT: *Examining witness.* The asking of questions of witnesses, in a criminal trial, by the court, in such manner and under such circumstances as to indicate to the jury the court's suspicion or opinion that the witness had been instructed by defendant or his attorney not to answer a certain question which the court required him to answer, is cause for reversal, where there was no foundation for such suspicion or opinion.

**Notice of Evidence:** PROOF OF SERVICE. Proof that a notice advising of proposed additional witnesses in a criminal trial has been served, must be made either by formal return like that required on an original notice, or, else, by other evidence showing that the notice was in fact given to the defendant, as the statute requires.

**Cross-examination.** A sheriff who has testified upon direct examination in a criminal action, that after receiving the warrant for defendant he made search for him, may be asked on cross-examination, if the defendant's father had not stated to him the day before the warrant was served, that he would have the defendant come up the next morning and surrender himself, as such fact

would tend to affect the credibility of his statement that he could not find defendant, by showing that, under the circumstances, he was not likely to make such a search; and it would bear, as well, on the claim made that defendant was evading arrest.

SAME. A witness who has testified to the bad moral character of
4 another witness, cannot be questioned on cross-examination as to whether he had ever heard certain persons named, not shown to have been acquainted with or to live in the neighborhood of the witness to whose character he had testified, speak of the latter's character.

*Appeal from Dickinson District Court.*—HON. W. B. QUARTON, Judge.

WEDNESDAY, DECEMBER 9, 1896.

THE defendant was indicted for the crime of seduction, was convicted, and sentenced to the penitentiary for the term of two years, and adjudged to pay the costs of prosecution, from which sentence and judgment this appeal is prosecuted.—*Reversed.*

*Allen & Cullen* and *A. C. Parker* for appellant.

*Milton Remley*, attorney general, for the state.

KINNE, J.—I. We are confronted with a record of over four hundred pages, in which not a single assignment of errors is to be found. Under the statute, in such cases we are required to "examine the record, and, without regard to technical errors, or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands." Code, section 4538. We have held in criminal cases, where no argument or assignment of errors was filed, that we would not enter upon a discussion of the case; that in such cases all we were required to do was to examine the record, and, if no error was found, to announce that fact and the judgment of the court. *State v. Quinn,* 63 Iowa, 396 (19 N. W.

Rep. 256); *State v. Lundermilk*, 50 Iowa, 695. In this case, however, extended arguments are filed by both sides, and we shall proceed to discuss the questions presented. The county attorney, in his opening statement to the jury, said he proposed to show that the defendant stated to the prosecutrix that if she would release him from all liability he would pay her a certain sum of money; that he endeavored to get her to dispose of the child in some way so as to relieve him from liability, and offered her money to do so. The statement was objected to before being made, as well as afterwards, as being incompetent, irrelevant, and immaterial, and the objection was overruled, and an exception taken. It is earnestly contended, that such evidence was not only improper and inadmissible, but was known to be so by the county attorney when he made the statement, and hence was without warrant, and made in bad faith, and such misconduct as worked great prejudice to the defendant. We do not find it necessary to determine the question of the admissibility of such evidence. If, however, the prosecutor in good faith, and with reasonable grounds to believe the evidence admissible, states what he claims to be the substance of such evidence to the jury, it does not follow that his conduct in so doing, is censurable, because in the further progress of the trial, as in this case, the court rules out said evidence, when offered, as improper. There is much doubt as to whether the matter complained of is a part of the record, so as to require us to pass upon the question presented; but, in view of the doubt, we may say that, conceding it to be properly of record, we are not warranted, in view of the facts, in holding that the statement was misconduct. We see nothing to indicate bad faith or intentional wrong on the part of the prosecution in making the statement. The evidence, when offered, was ruled out, and

it appears, that it worked no prejudice to the defendant.

II.   Very many acts of the trial court are complained of as constituting such misconduct as should work a reversal of this case.   We cannot consider them all separately.  Some of the remarks of the court were proper and timely; others were uncalled for, if not positively improper; and still other acts were, as it seems to us, highly improper, and certainly prejudicial.   We discover no act of the court which prejudiced the defendant, save the matter we are about to refer to.   In the course of the examination of the defendant's witness, O'Farrell, counsel for the defendant was attempting to show, by the witness, specific acts of unchastity on the part of the prosecutrix, prior to her alleged seduction.   The witness was asked if he had sexual intercourse with the prosecutrix at a certain time and place, and failed to answer, whereupon the question was repeated, and the witness appealed to the court to know if he was compelled to answer the question, and was told that he must answer it.   Thereafter the following occurred: "The Court:   You may answer that question, and answer it promptly now.   You know whether you did or didn't, and you don't have to study an hour to know that fact.   Q. Did you?   (No answer.)   Q. Answer it by yes or no. (No answer.)   Q. Answer it.   The Court: Are you going to answer that question?   A.  I don't have to answer it.   The Court:  Yes, you do have to answer it.   Mr. Reporter, take this question: Q. Have you been talked with before you came here by counsel for Mr. Allen, or any other person, as to the answers that you should make to the questions here?   Mr. Parker: Is that proper by the court? Mr. Allen: That is a question propounded by the court. I object. · The Court: You can make any objection you may want to.   Mr. Parker: We object to that as

improper, incompetent, and irrelevant. It is an improper and unwarranted question to be asked by the court. The Court: Objection overruled. Answer the question, sir. (Defendant excepts.) Mr. Allen: And, assuming something that has not been shown or developed in the testimony of this case, and it is not a question, with all due respect to the court, not a proper one for the court. The Court: Objection overruled. Answer that. Read the question, Mr. Reporter. (Defendant excepts. Question read by the reporter.) A. I talked with Mr. Allen. Q. How many talks have you had with him? (The defendant makes the same objection. Objection overruled. Defendant excepts.) A. One, I think. Q. One; but only one? Did you have any talk with him or any one of counsel for the defendant, that you should hesitate in answering these questions, sir? (The defendant makes the same objection.) The Court: Answer the question. (Defendant excepts.) A. No, sir. Q. Now, answer the question that has been asked you. Read that, Mr. Reporter." The questions of the court were well calculated to impress the jury with the conviction that the court thought that the witness was avoiding and refusing to answer the question because he had been advised so to do by the defendant and his counsel. The effect of the inference to be properly drawn from the questions asked by the court was not other, or different, than it would have been had his honor directly charged the defendant and counsel with tampering with the witness, and advising him to refuse to answer, even, in obedience to the command of the court. Such a charge, if sustained, might have merited severe punishment of both defendant and his counsel, possibly. Nothing had happened in the examination of the witness, or in the conduct of the defendant, or of his counsel, to warrant a suspicion, even, that any attempt had been made by either to influence the witness in any way,

much less improperly. It was a very grave charge to make, or insinuate, and the effect of the court's questions must have been highly prejudicial to the defendant. Besides, they were calculated to shake the confidence of the jury in the testimony of this witness generally, as well as in the evidence of every witness, adduced on behalf of the defendant. If the defendant and his counsel were guilty of thus attempting to impede proper legal inquiry in case of this witness, and to shape the examination by such improper means for the accomplishment of their own ends, why may not the jury very properly conclude that they would do the same thing as to all of the witnesses, and thus, perhaps, suppress the truth, or improperly color it to suit the necessities of the defendant? Surely, no one can say that the action of the court did not imperil the defendant's case, and rob the testimony adduced by his side of its force and strength. Besides, the court had no right to intimate that counsel had resorted to unwarranted and disreputable methods in coaching the witness, when there was nothing which could be a proper ground for such a charge. The record indicates that this case was hotly contested, and that counsel on both sides were not always in a proper frame of mind, and it may be that the acts of the court above mentioned were in a measure induced by the unnecessary wrangling of counsel. Certain it is that the court was in some manner led into doing a wrong which, though no doubt unintentional, was none the less a grave mistake, and fraught with great prejudice to the defendant. It must be remembered that jurors watch courts closely, and place great reliance on what a trial judge says and does. They are quick to perceive the leaning of the court. They are prompt to notice the inclination, even, of the court, and from his conduct, whether properly or not, they will almost invariably arrive at a conclusion as to what the court thinks

about the case.   Every remark dropped by the court, every act done by him during the progress of the trial, is the subject of comment and conclusion by jurymen. Hence it is that judges presiding at trials should be exceedingly discreet in what they say and do in the presence of a jury, lest they seem to lean towards or lend their influence to one side or the other.   As is said in *Wheeler v. Wallace*, 53 Mich. 355 (19 N. W. Rep. 34):   "It is nevertheless possible for a judge, however correct his motives, to be unconsciously so disturbed by circumstances that should not affect him, as to do and say, in the excitement of a trial, something, the effect of which he would not, at the time, realize, and thereby accomplish a mischief that was not designed."   Such seems to have been the fact in this case.   As we have indicated. the misconduct we have been discussing was so great, and so prejudicial, as to require us to reverse this case.   *People v. Abbott*, 101 Cal. 645, 36 Pac. Rep. 129; Id., 34 Pac. Rep. 500.

III.   Complaint is made of the conduct of counsel for the state during the progress of the trial.   We do not discover any such misconduct as could have worked any prejudice to the defendant.

IV.   Many errors are claimed as to the rulings of the court in admitting and excluding testimony.   The sheriff testified that after he had received the warrant for the defendant's arrest he went to Okoboji, and made search for the defendant, and did not find him, and left the warrant with one Wilson to arrest the defendant.   On cross-examination, he was asked if he had not been informed the day before that, by defendant's father, that he would have the boy come up the next morning, and surrender himself, and answered, "Yes, sir."   The answer was stricken out as not being proper cross-examination.   Other questions touching the same matter were excluded for the same reason.   These rulings were erroneous.

The state was attempting to show that the defendant was secreting himself, or attempting to avoid arrest, as a fact tending to show his guilt. It was proper to show the facts sought on cross-examination for the purpose of affecting the credibility of the sheriff's statement that he could not find the defendant, as tending to show why he would likely not make much of an effort so to do, in view of the information he possessed. It was also proper as tending to overcome any inference which might be drawn from the direct examination of the officer to the effect that the defendant was endeavoring to evade arrest.

V. Evidence was introduced to show that the prosecutrix had been associating with a man named Vance, and that he was a man of bad moral character, and an associate with lewd women. Upon cross-examination of a witness as to Vance's bad moral character, plaintiff's counsel, over the defendant's objection, was permitted to ask the witness whether or not he had heard various persons, mentioning their names, speak of Vance's bad character. This was also error. It did not appear that the persons whose names were mentioned, lived in Vance's neighborhood, or that they ever knew Vance, or ever heard of him or of his character; and as to some of them, it did not appear where they lived. If a witness on character may be impeached or discredited by showing that persons he has not mentioned, and who are not shown to have ever heard of the man whose character is in question, and who are not shown to have even resided in his neighborhood, or to have had any means of knowing as to his character, then such a witness may always be discredited. While it would have been proper to have inquired of the witness as to what persons he had heard discuss the character of Vance, it was not proper to attempt to overcome the weight of his evidence by showing that persons he

never heard of, or who, so far as appears, never knew Vance, and never heard of him, had never been heard to say anything against his character.

VI.   It is urged, that the evidence did not warrant the conviction of the defendant.   In view of a re-trial, it is not proper for us to now discuss the weight and sufficiency of the evidence.

VII.   Complaint is made of the action of the court in giving and in refusing to give instructions. We have carefully examined the instructions refused, as well as those given, and discover no error in the court's action.   In so far as the instructions asked were correct, they were embodied in the charge of the court.

VIII.   It appears, that certain' papers which the jury should not have had, unless by consent of parties, were sent to the jury room.   It is said, that they were improperly sent to the jury.   As this case is to be re-tried, and counsel will, doubtless, see to it that improper papers do not go to the jury on the re-trial, we need give the matter no further consideration.

IX.   But one question remains for consideration. Several persons were examined as witnesses on part of the state, and against defendant's objection, whose names were not indorsed upon the indictment, and who, in fact, were never before the grand jury, and it is claimed no notice was served upon the defendant of the state's intention to use them as witnesses on the trial.   No complaint is made as to the form of the notice which appears in the record, but it is urged that there was no proper evidence that it had been served upon the defendant.   The return is defective in that it fails to show that the person making the service was an officer, and the return is not sworn to.   When formal service is made of such a notice, the return should be such as is required in case of service of original notices, or it

should be shown by other evidence that notice was in fact given to the defendant, as the statute requires. We conclude that there was no evidence before the court showing that proper notice had been given the defendant. For the reasons heretofore given, the judgment below must be REVERSED.