## Asa Annis and Jesse Annis v. The People.

*Examination before magistrate.* — The provisions of the act of 1859, (*Laws of 1859; p.* 393,) in reference to the examination before a magistrate of persons charged with offences, were designed, to some extent, to accomplish the purpose of a presentment by a grand jury, but it was not designed that the complaint or warrant before the magistrate should stand in place of a formal presentment, nor that, in the Circuit Court, the prosecuting officer should be limited by it in the mode of charging the offence.

*Parties jointly examined may be separately informed against — Accomplices as witnesses.* — When several persons are joined in a complaint before a magistrate and bound over, the prosecuting officer may file a separate information against each in the Circuit Court, and the relation of parties so informed against is no other than that of accomplices, and does not disqualify them as witnesses against each other.

*Evidence — impeachment by proof of character for truth—cross-examination.* — Where a witness called for the purpose of impeaching another, testifies to his bad reputation for truth, and upon cross-examination, gives the name of a person he has heard speak against him, the witness may be required to state what was said by such person.

In nothing may parties be more easily mistaken than in judging of the general reputation of another for truth, and nothing short of a cross-examination, which compels the impeaching witness to state the sources of the reports and their nature, will enable the party either to test the correctness of the impeaching evidence, or to protect the witness who is assailed, if assailed unjustly.

*Statement by defendant in criminal cases* — The purpose of the act permitting defendants in criminal cases to make their statement to the jury, (*Laws of 1861, p.* 168,) was to give every person placed on trial on a charge of crime an opportunity to make full explanation to the jury in respect to the circumstances given in evidence, which are supposed to have a bearing against him, and to make such further statements as he may deem material.

*Statement by defendant in criminal cases, aid of counsel in.* — Where a person, being on trial for larceny of a horse, made his statement to the jury, but omitted to say anything in regard to the material points in the case, and his counsel, without his knowledge, submitted to the Court, for approval, a suggestion, in writing, to the prisoner in the following language: "I call your attention to the subject of the stolen mare, so that you may make a statement in reference to it or not," and the prosecuting attorney objecting, the Court refused to permit such suggestion to be made. *Held,* that the Court erred in its refusal, and that the suggestion of counsel in the manner proposed was unobjectionable and should have been permitted.

*Held, also,* that this error was not cured by the permission afterwards given to the prisoner to go upon the stand and make a further statement, in which he said: "I know nothing about the stealing, and had nothing to do with it;" as the prisoner evidently needed the aid which counsel proposed to give as much at this time as he had needed it before, and the ruling of the Court excluded all such aid.

*Heard October* 20 *and* 21. *Decided October* 24.

Error to Calhoun Circuit.

The facts are stated in the opinion.

*D. Darwin Hughes* for plaintiffs in error.

1. There was no such preliminary examination in this case as would warrant the filing of an information. — *Laws* 1859, *Act* 138, *Sec.* 6, *p.* 359.

An examination of three jointly, and a holding of. the three for trial, lays no foundation for an information against two. The record of the magistrate and the circuit must be identical as to parties.

2. The witness, Doty, was incompetent as being a party to the record.

Doty being a party defendant to the preliminary examination, was not a competent witness to verify the information.

The information must be verified before filing, and at the time of its verification there was no foundation laid except the joint examination of the three. Doty was not a competent witness on the examination, and if not, he could not verify the information. If, after he was jointly held for trial, he became competent to swear in the case for any purpose, when was it?

3. The defendants were entitled to the assistance of their counsel while making their statements, both by suggesting to them material subjects and by interrogation. *Const. Mich., Art.* 6, §28; *Laws* 1861, *Act* 125, §2; *People v. Thomas*, 9 *Mich.*, 314; *Maher v. The People*, 10 *Mich.*, 327; *The People v. Thomas*, 9 *Mich.*, 314.

4. When an impeaching witness has sworn that the character of a witness is bad, and on cross-examination has stated the names of persons whom he has heard speak against it, he cannot be asked what those persons said. It is hearsay and is irrelevant. The inquiry must be general as to his *reputation*, not what particular individuals have said. — *Bates v. Barber*, 4 *Cush.*, 109; *Lower v. Winters*, 7 *Cow.*, 264; *State v. Howard*, 9 *N.*

*II.; People v. Mather*, 4 *Wend.*, 259; 1 *Greenl. Ev.*, §461; *Gordon v. The State*, 3 *Clarke*, (*Iowa*) 414.

*A. Williams*, Attorney General, for The People.

1. The objection that Doty was not a competent witness for the reason that he was jointly charged with the defendants in the complaint before the magistrate, is not well taken.

An accomplice, whether principal or accessory, not being upon trial with his companions in crime, is certainly a competent witness; and this though his hopes of pardon depend upon their conviction. — 1 *Greenleaf's Ev.*, §379; 2 *East.*, 782; *The People v. Jenness*, 5 *Mich.*, 307.

2. The objection that the Court acquired no jurisdiction of the respondents through the filing of the information, for the reason it was verified by Doty, who was jointly charged with them in the complaint on which they were held by the examining magistrate, cannot be sustained either upon principle or authority. — *Washburn v. The People*, 10 *Mich.*, 372–3–4–5, 384–5–6; *Hicks v. The People*, 10 *Mich.*, 395; *Evans v. The People*, 12 *Mich.*, 27, 37–8; "*Irregularities*," *Bouv's L. Dic.*, and cases cited; 12 *Mich.*, 371–6; 3 *Mich.*, 78, 83–4.

3. The fact that several persons were jointly charged with a crime in a complaint before a magistrate under the act of 1859, cannot operate to prevent the prosecuting officer from informing against them separately in the Circuit Court. The administration of justice may sometimes be better promoted by such course. — *Smith's Commentaries, Secs.* 490–1–2–3; 1 *Kent's Com.*, 468; 3 *Cowen, R.*, 89, 96; 4 *Comstock R.*, 140–4–5.

4. It is averred, as error, that James Case, one of the respondents' witnesses, introduced to impeach George Doty, after testifying upon his cross-examination, "that he had heard Gilbert G. Collins speak against said George Doty before the commencement of this suit," was allowed

to answer the question, "What did Gilbert G. Collins say?"

This question was proper and relevant by way of testing the credibility or means of knowledge of the witness Case, or with a view to his own impeachment.— *The People v. Dalton*, 15 *Wend.*, 581-5-6-7; *Green's Practice*, §1216, and authorities cited; 1 *Greenleaf's Ev.*, §461, and authorities cited; 1 *Mich.*, 107-8.

COOLEY J.:

The defendants and one George Doty were arrested upon a warrant issued by a Justice of the Peace, charging them with the larceny of a mare. A preliminary examination having been had, the Justice found probable cause for believing them guilty of the offence, and these defendants were duly recognized to answer the charge in the Circuit Court, while Doty was committed to jail in default of bail.

The prosecuting attorney, instead of proceeding against the three jointly in the Circuit Court, filed one information against Doty, and another against these defendants: the latter being verified by the oath of Doty. The defendants, being arraigned on this information, pleaded not guilty thereto, and the case was continued to the next term of the Court.

When the cause came on for trial against these defendants, Doty was called as a witness for the people; and on its being admitted that he was the same person who was joined with them in the proceedings before the justice, the counsel for the defendants objected to his being sworn and examined as a witness, on the ground that he was not a competent witness in the case. The Circuit Judge overruled the objection, and the witness was sworn and gave evidence.

The reason urged for this objection is, that Doty was a party to the record, and therefore could not be made

a witness against the other parties.   We do not think
this position is correct, and it does not, therefore, become
necessary to decide whether his being a party would of
necessity preclude his being a witness against joint
defendants, when he was not himself on trial.  It is true
he was a party to the proceedings before the justice,
but those proceedings are only preliminary to the filing
of an information, and do not constitute a part of the
record in the Circuit Court.  The statute (*Laws of* 1859,
*p.* 393,) provides that, except in certain specified cases,
no information shall be filed against any person for any
offence, until such person shall have had a preliminary
examination therefor, before an examining officer or
magistrate, unless such person shall waive his right to
such · examination.  · The examination, under this statute,
was designed, to some extent, to accomplish the purpose
of a presentment by the grand jury under the law as it
existed before, in protecting a party against being sub-
ject to the indignity of a public trial for an offence
before probable cause had been established against him
by evidence under oath.  But it was never designed that
the complaint or warrant before the magistrate should
stand in the place of a formal presentment, nor that in
the Circuit Court, the proceeding officer should be limited
by it in this mode of charging the offence.   It is un-
doubtedly competent for him, so long as · he does not
undertake to proceed against a person for a different
transaction than that to which the examination relates,
to put his information in such form as, in his opinion,
will enable him to try the offence on the merits, in the
way most effectually to· advance the ends of justice.   In
the present case he deemed it important that the defend-
ants, who had been jointly examined for an offence
which was several as well as joint, should be separately
proceeded against in the Circuit Court; and we have no
doubt of his right to do so.   As the information was

the commencement of the record in the Circuit Court, Doty stood in no other relation to the present defendants than that of an accomplice, and there was no legal objection to his evidence.

After Doty had been examined, the defence called one Case, for the purpose of impeaching him, who testified that he was acquainted with said Doty, and had known him for several years, and for that length of time had lived within two miles of him; that he had the means of knowing the general reputation of said Doty for truth and veracity in the neighborhood in which they both resided, and did know such reputation, and that it was bad. On being cross-examined, he further stated he had heard Gilbert G. Collins speak against said Doty, before the commencement of this suit. The prosecuting attorney then asked the witness the question: "What did Gilbert G. Collins say?" which was objected to by the counsel for the defendant, on the ground that it was not proper cross-examination, and that the question called for inadmissible hearsay testimony. The Court overruled the objection, and the witness answered the question.

We have no doubt that this ruling of the Circuit Judge was correct. It was in accordance with the practice which has prevailed in this State from the earliest days, and in entire accord, as we believe, with the general rules of evidence. Mr. Greenleaf lays down the rule that where the impeaching witness has spoken to general reputation, the opposite party may cross-examine him as to his means of knowledge, and the grounds of his opinion. — 1 *Greenl. Ev.*, §461. The same rule is laid down in *Phillips v. Kingfield*, 19 *Me.*, 381, and *Bates v. Barber*, 4 *Cush.*, 109. The real purpose of this cross-examination is to enable the Court and jury to determine whether the impeaching witness in fact knows the general reputation of the other, and if so, whether he testifies truly in regard to it.

ANNIS *v.* THE PEOPLE.

It was suggested, on the argument, that the witness might, with propriety, be asked whether the unfavorable reports which prevailed had reference to the question of truth, so as to test his accuracy in assuming to speak to a general reputation for veracity; but if the examination must stop here, its purpose would very generally be defeated. There is no case where a thorough cross-examination is more important to an elucidation of the truth, than where a witness in giving an answer to a general question which calls both for matter of fact and matter of opinion. If a witness can shield himself behind an answer so general that, even if false, the person who knows that fact cannot testify with definiteness on the subject, we may well believe that bad men will frequently resort to this species of evidence where the truth will not warrant it.

And in nothing may parties be more easily mistaken than in judging of the general reputation of another for truth and veracity. They may either be mistaken in assuming the speech of one or two to be the voice of community; or they may confound a reputation for something else with a reputation for untruth; or they may misconstrue reports; or they may honestly be mistaken in regard to their purport. Nothing is more common in practice than to see a witness placed upon the stand to impeach the general reputation of another for veracity, when a cross-examination demonstrates that the reports only relate to a failure — probably an honest one — to meet obligations, while the party's real reputation for truth is above suspicion. Nothing short of a cross-examination, which compels the impeaching witness to state both the source of the reports and their nature, will enable the party either to test the correctness of the impeaching evidence, or to protect the witness who is assailed, if he is assailed, unjustly.

There is one other point in the case which is pre-

ANNIS v. THE PEOPLE.

sented by the record as follows: Jesse Annis, one of the defendants, went upon the witness stand, and, without being interrogated, made a statement under the act of 1861, (*Laws of* 1861, *p.* 168,) but in such statement said nothing upon the subject of his knowledge of the mare' alleged to have been stolen, but did make a statement in reference to other material points in the case. Whereupon the counsel for the defendants proposed to call the attention of said Jesse, while upon the stand, to a subject which he had omitted, in the following words: " I call your attention to the subject of your knowledge of the stolen mare, so that you may make a statement in reference to it or not," which proposition was made in writing, and submitted to the Court and to the prosecuting attorney, without being made known to said Jesse Annis, or to any other person. The prosecuting attorney objected, on the ground that the statement to be made by the defendant must be made without interrogation to him, and without any suggestion to him by counsel, while he was upon the stand. The Circuit Judge sustained the objection, and said Jesse Annis left the stand; but he afterwards requested the Court to allow him to make a further statement, which request was granted; whereupon he went upon the stand and stated as follows: "I know nothing about the stealing, and had nothing to do with it."

Two questions are presented for decision in reference to this statement: *First,* Whether the Court erred in the ruling; and if so, then, *Second,* Whether the error was cured by the defendant afterwards going upon the stand and making the statement he did.

We have already had occasion to consider the purpose and effect of the act of 1861, under which this statement was made. The purpose of the Legislature was to give every person placed on trial on a charge of crime an opportunity to make a full explanation to the jury in

respect to the circumstances given in evidence which are supposed to have a bearing against him, and to make such further statements as he may deem material. Although not under oath, the jury have a right to consider this statement in making up their verdict, and may give it such weight as they think it entitled to. — *People v. Durant,* 13 *Mich.* See also, *People v. Washburn,* 10 *Mich,* 372 ; *People v. Thomas,* 9 *Mich.,* 314. — The statute is both just and humane in its purposes, and it should receive a construction which will give it full effect.

The defendant, when he goes upon the stand, may fairly be supposed to understand what facts within his knowledge will have a bearing upon the case, and will tend to remove any suspicion which the sworn evidence has cast upon him. There is no propriety, therefore, in his counsel being allowed to question him as a witness is questioned, and the statute which allows him to "make a statement" evidently does not contemplate that his knowledge of the case shall be drawn from him by questions in the usual form.

But to hold that the moment the defendant is placed upon the stand he shall be debarred of all assistance from his counsel, and left to go through his statement as his fears or his embarrassment may enable him, in the face of the consequences which may follow from imperfect or unsatisfactory explanation, would in our opinion be to make, what the statute designed as an important privilege to the accused, a trap into which none but the most cool and self-possessed could place himself with much prospect of coming out unharmed. An innocent man, charged with a heinous offence, and against whom evidence of guilt has been given, is much more likely to be overwhelmed by his situation, and embarrassed, when called upon for explanation, than the offender, who is hardened in guilt; and if he is unlearned,

unaccustomed to speak in public assemblies, or to put together his thoughts in consecutive order any where, it will not be surprising if his explanation is incoherent, or if it overlooks important circumstances. The weak in mind and body are precisely the classes most needing the protection of this statute, and they are the very classes who, in most cases, would receive no benefit from it if the construction adopted by the Circuit Judge is correct.

This fact is illustrated in the case before us. The defendant went upon the stand and made a statement in reference to some material facts, but left it without saying a word about the property he was accused of having stolen. This omission could not fail to have its effect against him in the minds of the jury; and if, in fact, he was an innocent man, we can only attribute the omission to some embarrassment springing from the unaccustomed, and, to him, momentous circumstances surrounding his attempt at explanation.

The manner in which the counsel sought to call his attention to the subject to which he should direct his explanation, was quite unobjectionable, and was well calculated to secure to the defendant the benefits intended by the law, without endangering public justice. The defendant, through embarrassment, defect of memory, or other reason, having failed to make his explanation full, the counsel proposed to call his attention to the topics he had omitted, that he might make further explanation in regard to them if he saw fit. This was not done, however, by way of question addressed directly to the defendant, but the proposition was delivered in writing to the Judge that it might have his approval before the prisoner should be informed what it was. This precaution was eminently proper, and if adopted, as we think it should generally be, will prevent the privilege being abused by being made a means by which counsel may

indicate to a prisoner what they desire to have him say. And the Judge, although allowed to pass upon the propositions and reject such as are improper, should not be regarded as possessing unlimited power to reject at discretion, but as bound to allow all that are made in good faith, and with a view only to call the attention of the defendant to the subjects to which he should address himself.

The error in this case was not cured by the prisoner going upon the stand and making a further statement. The last statement was as defective as the first, and could scarcely have been made by any man in the form it was, unless he was laboring under great embarrassment. The prisoner needed the aid which counsel proposed to give, as much at this time as he had needed it before; and the ruling which the Court had made, and which was sweeping in its extent, excluded all such aid.

The Circuit Court for the County of Calhoun should be advised that, in the opinion of this Court, the verdict should be set aside and a new trial granted.

The other Justices concurred.