NAOMI HOFACRE, Appellee, v. THE CITY OF MONTICELLO, Appellant.

**Defective sidewalk:** EVIDENCE: EXAMINATION OF WITNESSES. Where 1 a physician in a personal injury action testified that he treated plaintiff before and after her injury, and that her health at the time of the accident was fairly good, it was error not to permit him to state on cross examination what her prior trouble really was, but as this was fully gone into without objection during his subsequent examination, the error was without prejudice.

**Same.** Where a witness testified that he slipped and fell on the 2 walk at the place plaintiff received her injury, and on cross examination pointed out another place where the walk was covered with ice, it was competent for him to state on redirect that the ice at the latter place was not as bad as at the one in question, even though the answer was in the nature of a conclusion.

**Same.** Where the inference to be drawn from the direct testi- 3 mony of a street commissioner was that of the city's due care of the walk at the place of accident, it was competent to show by him on cross examination that he had notified the owner of the property that the walk was dangerous, as tending to rebut the inference and to show notice of the defect to the city.

**Evidence:** IMPEACHMENT: COLLATERAL ISSUE. Where a witness 4 testifies to the immoral character of a party and on cross examination states that a certain person made a specific charge

of immorality, such person will not be permitted to deny that he made the charge, as the whole matter is collateral and his evidence cannot be used for impeachment purposes.

**Negligence:** NOTICE TO CITY: EVIDENCE. Evidence of the condition of a walk at the place of the accident at times other than when plaintiff received her injury, is admissible on the question of notice to the city of its condition; and an instruction that such evidence is receivable solely for the purpose of showing greater need on the part of the city for removing the obstruction is not a strictly accurate statement of the law.

**Weight of expert evidence:** INSTRUCTION. Ordinarily the jury should not be instructed that they were at liberty to give the evidence of an expert physician, who knew and had treated the plaintiff, in a personal injury action, greater weight than that of other experts based on hypothetical questions.

**Negligence of the city:** INSTRUCTION. Where the plaintiff's damage must be predicated entirely on an artificial accumulation of ice upon the walk in such manner as to render it dangerous to pedestrians, failure to instruct that if the city had notice, or in the exercise of ordinary care should have known thereof and failed to remove the same within a reasonable time thereafter, the plaintiff could recover for injuries resulting from the defect, was reversible error.

**Same.** Where there was nothing in the construction of the walk itself which caused the injury, the jury should be so instructed.

**Failure of plaintiff to look:** INSTRUCTION. Where plaintiff failed to observe the dangerous condition of the walk, because her attention was diverted, the jury should have been instructed as to her duty in the premises and any excuse for not observing the same.

**Preservation of evidence.** Where a portion of the evidence in a law action was taken by one reporter and the balance by another, and by agreement the entire notes were to be certified by only one of the reporters, the several certifications as made and the notes, translations and certificates thereafter filed are held to constitute a proper preservation of the evidence. For the particular facts see opinion.

**Translation of reporters' notes:** FILING. In a law action no time is specified for filing a translation of the reporters' notes, but if filed in proper form when required for use it is timely.

**Nunc pro tunc order.** The court has authority after the time for filing a bill of exceptions has expired, to make of record an agreement of parties relative to certification of the shorthand notes by a nunc pro tunc order.

*Appeal from Jones District Court.*— HON. B. H. MILLER,
Judge.

WEDNESDAY, MAY 10, 1905.

ACTION at law to recover damages for injuries received
by plaintiff through a fall upon a sidewalk in the defendant
city. The answer was a general denial. The case was tried
to a jury, resulting in a verdict and judgment for plaintiff in
the sum of $5,219. Defendant appeals. — *Reversed.*

*Herrick & Bauder* and *Welch & Welch,* for appellant.

*J. W. Doxsee* and *F. O. Ellison,* for appellee.

DEEMER, J. — Before going to the merits, there is
a question of practice which must be disposed of. Plaintiff
has filed a motion to strike parts of the evidence from the
abstracts on the ground that it was not properly preserved
and made of record in the trial court by bill of exceptions or
otherwise.

The facts with reference to this matter are that the
evidence was taken down by two shorthand reporters, one
serving during the early part of the trial and the other during
the latter part. B. I. Tanner and L. M. Hull were the two
reporters, and they were each official reporters of the district
court of Jones county.

It was agreed between counsel that Tanner should cer-
tify all shorthand notes taken upon the trial, including those
taken by Hull, as though he were the sole reporter in the case,
and that his certificate should have the same
force and effect as though the notes were certi-
fied by both officials. At the conclusion of the
trial, and before the return of the verdict, Tanner made
a certificate to the shorthand notes as if he had reported
the entire testimony, and the trial judge also certified the
notes as required by law. The notes so certified were filed

10. PRESERVA-
TION OF
EVIDENCE.

March 21, 1903. The verdict of the jury was returned on the same day, and judgment was rendered thereon on April 13, 1903. Notice of appeal was served May 27, 1903. On September 4, 1903, a translation of the shorthand reporters' notes, certified by Tanner alone, was filed with the clerk. This was followed on the 21st of that month with a certificate from Hull, the other shorthand reporter, both to the notes taken by him and to the translation thereof as well. December 29, 1903, Hull made another certificate to the shorthand notes and the translation thereof, and on January 4, 1904, Tanner, by direction of the trial court, filed an amended certificate to his shorthand notes and to the translation thereof.

Remembering that this is a law action, and that the statutes now recognize shorthand notes duly certified as being the equivalent of a bill of exceptions, it is apparent from this statement that the evidence was properly preserved under the provisions of section 3675 of the Code, or, if this be not true, that plaintiff, on account of her counsel's agreement, is now estopped from asserting that the notes are not properly certified. *Brethol v. Village,* 168 Ill. 162 (48 N. E. Rep. 38).

Translation of the shorthand notes was not required to be filed at any particular time. All that is necessary in a law action is that it be filed and in form for use when such **11. TRANSLATION OF REPORTERS' NOTES: filing.** translation becomes necessary; and this time does not ordinarily arrive until we are compelled to resort thereto in order to discover what the evidence really was. *Smith v. Wellslager,* 105 Iowa, 140, and cases cited.

It appears, however, that the agreement between counsel was for some reason not entered of record at the time it was made. When this omission was discovered, de- **12. NUNC PRO TUNC ORDER.** fendant's counsel, at a subsequent term of court, and after the time for the filing of a bill of exceptions had expired, made a motion for a *nunc pro tunc*

entry of this agreement upon the records. This motion was resisted by appellee, but the court, after hearing the evidence adduced by the parties on the issue made, sustained the same, and made the entry of the agreement *nunc pro tunc*. No appeal was taken from this ruling, and, if the trial court had jurisdiction and authority to make it, it must be accepted as a verity.

Counsel claim, however, that the court had no such authority. They rely upon statutes relating to the correction of errors in journal entries made through mistake or oversight, which have no possible application to this case. An entry *nunc pro tunc* is something entirely different from an entry correcting an oversight or mistake.

Courts have inherent power to make orders *nunc pro tunc,* and they are not limited by these special statutes as to time when application may be made.

Such an entry, of course, assumes that an act was done at a particular time, which never got of record in the proper books; and the entry is finally made now for then. If there was no act done, then, of course, there can be no entry *nunc pro tunc*. If the act was in fact done, but the proper evidence thereof is wanting, it may subsequently be supplied so as to relate back to the time when the act was in fact done.

That the entry in this case was not made until after the time for the filing of a bill of exceptions had expired is of no importance. The very object of the proceeding is to secure an entry which will relate back. If no attempt had been made to file a bill under the agreement, or if there had. not in fact been such an agreement as claimed, the court could not, after the time for the filing of a bill had expired, do anything which would give the defeated party a right to then file a bill. But that is manifestly not this case.

As the trial court had jurisdiction to make the order, we shall not inquire as to the sufficiency of the evidence to sustain it; nor shall we cite authorities in support of the prin-

ciple announced. They are already familiar to the profession. The motion to strike evidence is overruled.

II. We come now to the merits, and shall first dispose of the questions relating to rulings on evidence.

A physician who was called to treat plaintiff after she had received her injuries, and who had theretofore been her medical adviser, was placed upon the witness stand by the plaintiff, and in his examination detailed the extent of the injuries, and testified as to the treatment he gave her. He also testified that at the time of the accident plaintiff's health was fairly good; and that, aside from her injuries, it kept fairly good for about three weeks after her fall, and that then she commenced to decline. On cross-examination he was asked as to what plaintiff's trouble was before her fall upon the sidewalk. Objection to this was sustained because it related to a period anterior to that inquired about in his examination in chief. The objection was sustained. He stated in his cross-examination that in what he had said about her health before the accident he meant that " she was in fair health for her," and that his opinion with reference thereto was based upon knowledge acquired from his previous treatment of her. This answer was also stricken out on motion. These rulings were wrong, but, as the doctor was subsequently permitted to state the troubles with which plaintiff was afflicted prior to her fall, the error was without prejudice. He was fully cross-examined with reference thereto, and stated that she had been suffering from tuberculosis for some two years prior to her accident, and that she had had three hemorrhages. He also stated that she had no other trouble prior to her fall upon the sidewalk. True, an objection to a direct question calling for this information was erroneously sustained; but, as the physician practically testified to the same matter without objection, there was no prejudice.

On re-examination the doctor testified that plaintiff had never before the accident been troubled with hysteria, and on

<div style="margin-left:2em">1. EVIDENCE:<br>examination<br>of witnesses.</div>

cross-examination that she had had no trouble but tuberculosis. This same witness was asked on cross-examination as to whether or not in his opinion plaintiff's injuries were permanent. Manifestly, this was not cross-examination. *Rice v. Des Moines,* 40 Iowa, 638.

One Ferring was a witness for the plaintiff, and he testified to having slipped and fallen upon the sidewalk at the same place that plaintiff did, and as to the condition of the walk at that place. On cross-examination he was asked if he had ever noticed ice on the sidewalks in Monticello at other places than the one complained of. To this he responded that he had, and he named another place. On re-examination he was asked if the ice at other places was as bad as at the point in question. Objection to this was overruled, and he answered that he did not think it was. The matter was brought out on cross-examination, and plaintiff had the right to re-examine with respect thereto. The question, no doubt, called for an opinion or conclusion of the witness, or rather for a comparison by him; but in view of the nature of the cross-examination and of the answer given by the witness we are not inclined to interfere with the discretion of the trial court in such matters. *Collins v. R. R.,* 109 N. Y. 243 (16 N. E. Rep. 50).

2. SAME.

At any rate, the comparison made by the witness with reference to the ice at other places was not prejudicial, save as defendant made it so by insisting upon cross-examining with respect thereto. The mere fact that witness did not think the ice at other places which he had noticed was as bad as at the one in question was immaterial save as it explained his answers given upon cross-examination, and we are not prepared to say that when a matter is brought out on cross-examination, as in the instant case, the party calling the witness may not rebut the inferences which may arise from the cross-examination by calling for the witness's opinion or conclusion. At any rate, the field is left open for such relevant

inquiries as the trial court, in its discretion, may think proper.

Defendant's street commissioner was called as a witness for it, and testified regarding the condition and care of the walk at and near the time of the accident. He also testified that he watched the place, and threw ashes upon 3. SAME.        it in the winter before the accident occurred.

He further testified that during the year in which plaintiff fell he did not do anything himself, but passed along the walk, and noticed its condition, and did all he could.

The inference to be derived from his testimony was that defendant has used due care with reference to the construction and maintenance of the walk.    On cross-examination he was asked if he had not notified the owners of the building abutting upon the walk, and who were responsible for the conditions as they existed, that there was a bad place there, and that they must change their stairway.    Objection to this was overruled, and he answered that he had notified them about it.    The ruling is complained of.    We think it was correct. It tended not only to rebut the inference that there was no defect in the walk at the point in question, but also showed notice of the defect to the city.    If it be contended that this witness's direct examination showed notice to the city, then the answer was without prejudice.    If the inference to be derived was to the contrary, then it was proper cross-examination.    That the declaration was made to a third party is not controlling.    At the time the declaration was made or the notice given the property owner the street commissioner was acting for and on behalf of the city, and his declaration at that time showing knowledge would be binding upon the city, just as much as if the city had made the declaration itself. *Butler v. Malvern,* 91 Iowa, 398; *Smith v. Des Moines,* 84 Iowa, 685.

A witness by the name of Lucky testified on behalf of the defendant to the bad reputation of the plaintiff for mor-

ality in the neighborhood where she resided.    On cross-exam-

**4. EVIDENCE: impeachment; collateral issue.** ination he was asked to name the persons whom he had heard speak ill of the plaintiff. In response he named several. He was then asked as to what he had heard one Sandhouse, whom he had named, say, and ·in response answered, "I heard him say he had been with the whole family." On re-examination he was asked to repeat the language of Sandhouse, and he said, "I heard him say he had slept with her — been with her." No objection was made to this inquiry. On re-cross-examination by plaintiff he fixed the time and place where the declaration was made. When plaintiff came to her rebuttal she placed Sandhouse on the witness stand, and over defendant's objections was permitted to obtain a denial from him of everything which Lucky had repeated as coming from him regarding the girl. It is now argued that the court erred in permitting the witness Sandhouse to deny the statements attributed to him, for the reason that the whole matter was collateral, and could not be used for impeaching purposes. To meet this, plaintiff's counsel suggests that during the argument of the case to the jury the entire testimony of the witness Sandhouse was stricken out. But we do not think so. If the court intended to do it, it was in a very uncertain and ambiguous manner, and the jury certainly did not have any clear direction regarding the matter. Even with the transcript before us, and with time to study and reflect over the matter, we cannot tell whether or not the testimony was excluded. So that we are brought back to the correctness of the ruling. That the examination, although bitterly complained of, was proper, must be conceded. *State v. Allen,* 100 Iowa, 7.

And the only debatable proposition is whether or not the trial court erred in admitting the testimony of Sandhouse. Of course, his testimony was not substantive in character. It was admitted either for the purpose of impeaching Lucky, or of destroying the effect of his testimony regarding plaintiff's

reputation. While at first blush this testimony appears to be admissible, yet the authorities almost, if not quite, without exception hold that it introduces a collateral issue, and, if received, would extend controversies beyond all reason. *Sonneborn v. Bernstein*, 49 Ala. 172; *Robbins v. Spencer*, 121 Ind. 596 (22 N. E. Rep. 660); *McDermott v. State*, 13 Ohio St. 332 (82 Am. Dec. 444); *People v. Mather*, 4 Wend. 257, 21 Am. Dec. 122; *Brower v. Ream* (Ind. App.) 42 N. E. Rep. 824. We have, in effect, heretofore adopted this rule without any particular discussion. *State v. Woodworth*, 65 Iowa, 141.

But for this unbroken line of authority, the writer would be inclined to adopt a contrary rule. Such evidence as was here introduced, while perhaps collateral, in that it did not go to the main issue in the case, was brought into it by the defendant in order to show that plaintiff was not a credible witness. Plaintiff, as all the cases hold, had the right to fully cross-examine as to the witness's means of knowledge, etc., and, having obtained it, she should, as it seems to me, be permitted to impeach the impeaching witness, or to show that he in fact did not have the necessary knowledge upon which to venture an opinion as to general moral character. Such testimony would also, it occurs to me, tend to show prejudice and bias on the part of the witness. But as there seems to be nothing sustaining such a rule save an unsupported remark of Professor Wigmore in his new work on Evidence, section 1111, it is better, perhaps, to follow the current of authority, and to adhere to what is called the "orthodox rule." Plaintiff's counsel in argument made the most of this testimony of which he was capable, and that prejudice resulted from the admission thereof is not only presumed, but in this instance clearly demonstrated.

We shall say no more about rulings on evidence, for, although other matters are argued, they are not of sufficient importance to justify further mention.

III. The negligence charged against the defendant was

that it allowed the roof of a covered stairway to the second story of a building abutting upon one of its streets to drain toward the street, and permitted the owner to construct a trough under the eave of said roof in such a manner as that it discharged the water coming off from the roof of the stairway upon and onto one of the sidewalks in the street, where, during cold weather, it collected and froze, forming a large round slippery and unsafe obstruction of the sidewalk; that the walk where the water was thus discharged slanted to the north at a pitch which made it unsafe for travel when in a slippery condition; that at the time plaintiff received her injuries a large, rounded, and slippery accumulation of snow and ice was present at the place where the eave trough discharged its contents, which had been in that condition for a long time prior to the accident, and of which the defendant had both actual and constructive notice.   There was evidence in support of these allegations, and a verdict for some amount undoubtedly has support in the evidence.

Defendant complains of the trial court for refusing to give certain instructions asked by it; and also of those given by the trial court.   As the case must be reversed on account of the error already pointed out, what is said regarding the instructions will be for the guidance of the court upon a retrial.

Generally speaking, the instructions given are not objectionable.   Evidence as to the condition of the walk at other times was received over defendant's objections, but the evidence was rightly admitted as showing notice to the city.   *Wilberding v. City,* 111 Iowa, 484.   In instructing the jury with reference to this matter the trial court said that such evidence was admitted solely for the purpose of showing need of greater diligence on the part of the city in removing said obstruction, and should be considered for that purpose alone.   This is not an entirely accurate statement of the law.   The diligence required of the city in removing an obstruction of which it has,

5. NEGLIGENCE: notice to city; evidence.

or in the exercise of proper care should have had notice, is the same, no matter how often the need for removal.   The court. was right in its ruling admitting the testimony, but unfortunate, at least, in its language used in the instruction in referring to diligence in removing the obstruction rather than to defendant's knowledge of the situation and its care in ascertaining its condition.   We should not, perhaps, reverse the case for this alone, but merely suggest that the difficulty be avoided on a retrial.

In the tenth instruction the trial court used this language: " It may be that the opinion of experts who have treated her, and have had opportunities of observing her, and

6. WEIGHT OF EXPERT EVIDENCE: instruction.

knowing her condition from a longer perior of time, might be entitled to greater weight than the opinions of experts who confine their opinions on hypothetical questions or less extensive' observations or examinations; but this is a question for you, and you are to determine the value and weight of such testimony, and all such testimony you are to have with you as bearing upon plaintiff's injuries and physical condition."

As pointed out in *Bever v. Spangler,* 93 Iowa, 610, such instructions are always dangerous, especially where, as here, defendant is handicapped by a statute which denies it the right  to  introduce  plaintiff's  physicians  as  witnesses. Whether or not such an instruction is justifiable must depend upon the facts of each case, and, as a general rule, it is better not to suggest such tests as were here proposed.

The trial court gave no direct and pointed instructions regarding defendant's duty with reference to ice and snow

7. NEGLIGENCE OF CITY: instruction.

accumulating upon sidewalks, nor did it in any manner directly refer to the alleged defective slant of the walk.   The rules with reference to snow and ice upon sidewalks are well understood in this State.   See *Broberg v. City,* 63 Iowa, 523; *Huston v. City,* 101 Iowa, 33; *Hodges v. City,* 109 Iowa, 444.

The law as announced in these cases should have been

given to the jury in clear and concise language, that it might have understood the exact nature of the duties of the municipality with reference to snow and ice. If the ice was produced by artificial causes, such as the discharge of water from an eave trough directly upon a sidewalk, thus producing a special accumulation of ice at a particular place, which was or became rounded and uneven or otherwise dangerous to pedestrians, and the city had notice thereof, or should have had such notice, and a reasonable time within which to remove it, before the accident occurred, and failed to do so, it would be liable for injuries resulting from such a defect. *Hughes v. Lawrence*, 160 Mass. 474, 36 N. E. 485; *Gillrie v. Lockport,* 122 N. Y. 403, 25 N. E. 357; *Olson v. Worcester,* 142 Mass. 536, 8 N. E. 441.

There was nothing in the slant of the walk which in and of itself constituted negligence, and the jury should have been so instructed, and there was nothing in the original construction of the walk which in and of itself would make the defendant liable. Its liability, if any, must be predicated upon the presence of ice and snow thereon.

8. SAME.

Plaintiff did not observe the condition of the defective walk as she approached, because she says that her attention was attracted by a team which was rearing up onto the sidewalk. This feature of the case was not presented in as clear and perspicuous manner as it should have been. Defendant asked an instruction with reference thereto, which in itself was faulty; but the jury should have been clearly instructed as to plaintiff's duty in the premises, and as to any excuse she may have had for not observing where she was going.

9. FAILURE OF PLAINTIFF TO LOOK: instruction.

Without setting out the instructions in full which were given and refused, we have indicated in a general way our views with reference thereto, to the end that upon a retrial the case may be presented to a jury in accord therewith.

Other matters argued are not likely to arise upon a retrial, and we do not, therefore, consider them.

For the errors pointed out, the judgment must be and it is *reversed*.