ANNA HARMS v. FRED K. PROEHL.[1]

May 22, 1908.

Nos. 15,590—(60).

**Slander—Inadmissible Evidence.**

Upon the trial of an action for slander, the record of a church trial, at which the same matter was investigated and determined, is not admissible in evidence.

**Mitigation of Damages.**

The defendant may, in mitigation of damages, show that he heard the charges against the plaintiff and the evidence at the church trial, and honestly believed them to be true.

[1] Reported in 116 N. W. 587.

**Evidence of Intention.**

> When a defamatory statement is unambiguous and actionable per se, evidence that the defendant did not intend by his language to charge the plaintiff with a crime is inadmissible.

**Cross-Examination of Witness.**

> An impeaching witness may, on cross-examination, be required to specify the rumors or statements of individuals that led him to assert the existence of the bad reputation.

Action in the district court for Carver county to recover $10,000 for slander. The case was tried before Morrison, J., and a jury which found a verdict in favor of defendant. From an order denying her motion to set aside the verdict and for a new trial, plaintiff appealed. Reversed and a new trial granted.

*W. C. Odell*, for appellant.

*H. J. Peck* and *Thomas F. Craven*, for respondent.

ELLIOTT, J.

The appellant, Anna Harms, was a widow residing upon a farm. In the same neighborhood there resided a man named Otto Mesenbring. The complaint alleged that the defendant, Proehl, had used language in a public place in the presence of other parties which charged that Mrs. Harms had committed fornication with Mesenbring. In an action to recover damages for the slander, the jury returned a verdict in favor of the defendant, and the plaintiff appealed from an order denying her motion for a new trial. The only questions which require consideration relate to the alleged errors of the trial court in receiving evidence.

1. Mrs. Harms and Mesenbring were members of the same church, and it appeared that the charges against them had been made the subject of a church trial of Mesenbring, with the result that he had been practically found guilty and subjected to discipline. On the trial of the present case the defendant offered in evidence certain papers, which were said to constitute the record of the church trial. These papers were produced by the clerk of the congregation, who stated that they correctly represented what occurred at the church meeting. Proehl testified that he was present at the church trial and heard what was there said.

It was error to receive this so-called record in evidence. It was not in any sense a public or quasi public record, and, if used at all, should have been treated as a memorandum from which to refresh the recollection, of the witness. The alleged slanderous statements were made by Proehl to third persons in a saloon. There can, of course, be no pretense that the statements were privileged; but the defendant was entitled to show by competent evidence, for the purpose of mitigating the damages, that he had heard the charges made at the church trial and that he honestly believed them to be true. Hewitt v. Pioneer Press Co., 23 Minn. 178, 23 Am. 680; Marks v. Baker, 28 Minn. 162, 9 N. W. 678. What occurred at the church trial was immaterial, except in so far as it was heard by Proehl, and he was perfectly competent to testify as to what he heard. That the church may have convicted Mesenbring was not a defense for Proehl in this action; but his knowledge of what occurred at the trial was competent and material for the purpose of showing that the charge against Mrs. Harms was not malicious. The record which was received contained the clerk's understanding of what occurred and his conclusions, as well as some interesting comment. It also contained a copy of a statement said to have been made by a party who was not present at the church trial, and a recital of the appointment of a committee which was charged with the duty of inspecting Mrs. Harms' premises and reporting upon the probability of a witness having been able to see what he told the congregation that he did see. This record of the statements and conclusions of unsworn witnesses, with its jumble of testimony and narrative, must have been very prejudicial to the rights of the plaintiff. It went to the jury with all the prestige of the decision of an ecclesiastical tribunal, and was inevitably given great weight by the jurors. The plaintiff was entitled to have her case tried upon the testimony of witnesses produced and sworn in court.

2. An impeaching witness having testified to the bad reputation of the plaintiff for chastity, the court permitted the plaintiff's counsel on cross-examination to ask the witness to name the persons whom he had heard make statements derogatory to her character, but refused to permit the witness to answer questions which called for the statements which such parties had made. There has been some discus-

104 M.—20

sion as to the propriety of receiving evidence of this character on the grounds that it unnecessarily consumes time, serves to circulate petty neighborhood scandals, and brings the names of third persons into the dispute. But these objections have no great force, as the former applies to all cross-examination, and persons who circulate defamatory matter "in confidence" are not entitled to any special consideration. As well said by a learned writer, an effective mode of discrediting the impeaching witness is "to probe the grounds of the impeacher's knowledge as to the other's bad reputation, by requiring him to specify the particular rumors of misconduct, or statements of individuals, that have led him to assert the existence of the bad reputation. In theory, this rests upon the general principle that every witness may be discredited by exhibiting the inadequacy of his sources of knowledge. If a witness to another's bad reputation is speaking from a veritable knowledge of such a repute, he ought to be able to specify some of the rumored misconduct or some of the individual opinions that have gone to form that reputation. If he cannot do this, his assertions may be doubted." 2 Wigmore, Ev. § 1111. Similar language was used by Chief Justice Cooley in People v. Annis, 13 Mich. 517.

It has been held that the cross-examination should not be permitted to extend further than to require the witness to give the names of the persons who have made derogatory statements (People v. Mather, 4 Wend. [N. Y.] 239, 21 Am. Dec. 122; Bates v. Barber, 4 Cush. [Mass.] 107; Inhabitants of Phillips v. Inhabitants of Kingfield, 19 Me. 375, 36 Am. Dec. 760), although the reasons stated as justifying this rule seem to justify an even wider range of cross-examination. An examination of the following cases will show that the rule which requires the impeaching witness on cross-examination to give not only the names of parties but also their statements is very generally accepted: State v. Perkins, 66 N. C. 126; People v. Annis, 13 Mich. 511; Sonneborn v. Bernstein, 49 Ala. 168; Jackson v. State, 77 Ala. 18; Weeks v. Hull, 19 Conn. 377, 50 Am. Dec. 249; State v. Woodworth, 65 Iowa, 141, 21 N. W. 490; State v. Allen, 100 Iowa, 7, 69 N. W. 274; Hofacre v. City of Monticello, 128 Iowa, 239, 103 N. W. 488; Pickens v. State, 61 Miss. 563; State v. Howard, 9 N. H. 485; Newton v. Com., 102 S. W. 264, 31 Ky. L. 327. But, on the

theory that it is evidently necessary to stop somewhere, it is general-ly held that the statement of the witness that he heard certain persons make such statements cannot be contradicted. Sonneborn v. Bernstein, 49 Ala. 172; McDermott v. State, 13 Oh. St. 332, 82 Am. Dec. 444; Robbins v. Spencer, 121 Ind. 596, 22 N. E. 660; Brower v. Ream, 15 Ind. App. 51, 42 N. E. 824; State v. Woodworth, 65 Iowa, 141, 21 N. W. 490; Hofacre v. City of Monticello, 128 Iowa, 239, 103 N. W. 488. Contra, Johnson v. State, 75 Ark. 434, 88 S. W. 905.

3. The respondent was permitted to testify that when he uttered the alleged slanderous language he did not intend to charge Mrs. Harms with the commission of any crime. The language was unambiguous and actionable per se (Reitan v. Goebel, 33 Minn. 151, 22 N. W. 291), and, under the rule announced in Davis v. Hamilton, 88 Minn. 64, 92 N. W. 512, the reception of the evidence was error.

The order of the trial court is therefore reversed, and a new trial granted.