STATE of Iowa, Appellee,

v.

Bobby Lee WALKER, Appellant.

No. 64457.

Supreme Court of Iowa.

April 15, 1981.

Donald E. Doyle, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Merle Wilna Fleming, Asst. Atty. Gen., William E. Davis, Scott County Atty., and Realff H. Ottesen, Asst. Scott County Atty., for appellee.

Considered by HARRIS, P. J., and ALL-BEE, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

Bobby Lee Walker appeals from his conviction of second-degree burglary, § 713.3, The Code 1979, contending the trial court erred in denying him the right to present and examine certain witnesses who could corroborate his defense. The trial court held that the defendant's failure to comply with Iowa Rule of Criminal Procedure 12(3) warranted the sanction of excluding the potential witnesses' testimony. We reverse and remand.

Davenport police officers were called to investigate a burglary in process at a house in a residential neighborhood, used as the office of a construction company. When the officers arrived, a person later identified as the defendant ran from the rear of the building. He was pursued by uniformed officers on foot, who called for him to halt. The defendant was apprehended after a short chase. He was then searched by the officers, and a roll of postage stamps was found inside his jacket. An examination of the house revealed that the back door had been forced open. Although the office had been ransacked, the only item missing was a roll of postage stamps.

The State charged the defendant by trial information with second-degree burglary. The defendant pled not guilty and discovery proceedings commenced. Pursuant to Iowa Rule of Criminal Procedure 12(1), the defendant took depositions of the State's witnesses; in return, a list of witnesses "expected to be called for the defense" was required to be made by the defendant, in accordance with rule 12(3). No statement of witnesses was furnished by the defendant.

At trial the defense attempted to show the defendant was not the person who had forced open the rear door and ransacked the office. He testified he had been given the address of the house as the home of a man who owed him a gambling debt. He arrived at the house to collect the debt but received no answer after knocking on the front door. He went to the rear of the building to knock on the back door and found a roll of postage stamps lying on the ground outside the door. Placing the stamps in his jacket, he knocked on the door and noticed it was ajar. Suddenly he became aware of someone running toward him yelling "there he is," and, because he was a black in an all-white neighborhood and because of his criminal history, he ran away from the house. He did not hear anyone shout "police;" nor did he see a man in a police officer's uniform.

Prior to this testimony, the defendant had applied to the trial court to present and examine two individuals who could partially corroborate his version of the events. However, these witnesses had not previously been disclosed to the State under rule 12(3), and the State objected to the introduction of their testimony on this ground. Defense counsel sought to justify his failure to notify under rule 12(3) by claiming that at the time of the depositions he had not been aware of these potential witnesses, and that he had only recently been able to locate them. After hearing the respective arguments, the trial court did not formally rule on the defendant's application; however, the two individuals did not subsequently appear as witnesses for the defense.

After entry of judgment and the filing of this appeal, a nunc pro tunc order was sought to clarify the trial court's action with respect to its ruling on the defendant's application. An order was accordingly entered stating that the objections made by the State to the additional witnesses had been sustained on the basis that the defendant had failed to comply with the provisions of rule 12(3), which provides:

At the taking of a deposition by a defendant under subsection 1 or 2 of this rule, the defendant shall list all witnesses expected to be called for the defense. There shall be a continuing duty throughout trial to disclose additional defense witnesses, and such witnesses shall be subject to being deposed by the state.

Walker challenges the imposition of the preclusion sanction on the ground that he had not known of the witnesses "until the last moment" and it was an abuse of the court's discretion to apply the sanction under those circumstances. The State counters that the issue had not been preserved, because no ruling was entered denying defendant's application to permit the testimony and that, in any event, the court had not abused its discretion.

*I. The trial court ruling.* Walker's defense counsel, following presentation of the State's evidence, proposed to call the two witnesses in question. He apparently had anticipated the possibility of preclusion of this testimony, because he presented a "motion" to permit the testimony, in chambers, before his evidence began. The State objected on the ground it had not been notified of the witnesses in accordance with the rule. In hearing the motion, the court inquired whether the defendant had taken depositions of the State's witnesses, a condition precedent to defendant's reciprocal duty of disclosure. Counsel advised that they had. No ruling on the motion shows in the original court records; however, the witnesses in question did not testify. A nunc pro tunc order was entered, after the appeal was filed, reciting the motion and arguments, and sustaining the State's objection to the motion.

■ On appeal the State argues that because no ruling was made in the original record, there was nothing from which to appeal and the nunc pro tunc order subsequently entered, purporting to cure the defect, was ineffective. Walker has not assisted the court by addressing the issue of the nunc pro tunc order or of the lack of a trial court ruling. Our rule is that, when a motion is not ruled on in the trial court, and there is no request or demand for ruling, error has not been preserved. *State v. Schiernbeck,* 203 N.W.2d 546, 547 (Iowa 1973); *State v. Hephner,* 161 N.W.2d 714, 717 (Iowa 1968). In this case there was no express ruling by the trial court, and no request for a ruling was made by the defendant. Nevertheless, we believe the issue was preserved because the court's response to the motion was tantamount to a ruling.

■ The omission of an express ruling is not necessarily fatal to an appeal; in some cases, the ruling may be apparent from the circumstances:

In order to preserve the question for review, it is ordinarily not enough that an appropriate objection or motion be made, but the party must obtain an actual ruling upon the matter. *However, it is possible that the action of the court, while not an express ruling, may be treated as an implied ruling sufficient to support a review of the question raised.*

5 Am.Jur.2d *Appeal and Error* § 557, at 40 (1962) (emphasis added).

Whether or not a statement of a judge is to be construed as a ruling need not be confined to the judge's acts; the circumstances under which he acts are often as material as what he does. *A ruling by implication may be sufficient to present a question for review,* and although it has been said that counsel must obtain either a ruling or a refusal of the court to rule, and that mere failure to rule is not sufficient, *silence or a failure or refusal to rule may often be given the effect of a ruling,* unless the matter was never brought to the attention of the court.

4 C.J.S. *Appeal and Error* § 320, at 1022 (1957) (emphasis added).

We have held, in analogous situations, that an express ruling on requested instructions, or on objections to refusal to submit them, is not required. The giving of the instruction is tantamount to an overruling of the objections. *Stewart v. Hilton,* 247 Iowa 988, 994, 77 N.W.2d 637, 641 (1956). *See State v. Reese,* 259 N.W.2d 771, 777 (Iowa 1977) (request for instruction and objection to denial; error preserved without ruling, especially when issue raised in new-trial motion).

In *People v. Johnston,* 328 Mich. 213, 217, 43 N.W.2d 334, 335–36 (1950), a motion was made by the defendant to strike certain witnesses' testimony proposed to be presented in transcript form. No ruling

was made on the motion; however, comments made by the judge indicating such testimony violated the defendant's right to confrontation was considered to be a ruling for purposes of appeal.

■ The circumstances of this case, even without consideration of the nunc pro tunc order, strongly imply the motion to use the witnesses was denied, because the defense evidence, following immediately after the hearing on the motion, omitted the requested testimony. The nunc pro tunc order makes it clear that the defense request had been denied. That order, by the judge who had heard the matter, related the substance of the motion and the State's objection to it, as well as the defendant's explanation for his failure to disclose the witnesses. The order then stated, "[i]t was obvious to the court that the defendant was playing games with the court and [the court] *so advised him*." (Emphasis added.)

After the defendant had made and argued his motion to allow the testimony, and the court stated he thought he was "playing games" with the motion, one would naturally assume the motion had been overruled. It is also likely that the court intended its "playing games" comment to be a ruling on the motion. In any event the message was clear: the testimony was not going to be allowed. Under the circumstances, reluctance of the defendant's lawyer to ask for the ruling to be repeated, in formal terms and on the record, is understandable. It would have been better practice, of course, to insert a specific ruling or at least the judge's comments in the record at trial. However, it is the action taken, not the record of that action, which is essential. As we have said, "[t]he purpose of the rule requiring [a] record is not to *create* the judgment, but ... to furnish an enduring memorial of what has been done...." *General Mills, Inc. v. Prall*, 244 Iowa 218, 223–24, 56 N.W.2d 596, 600 (1953). We believe the circumstances of the case and the statements of the court were tantamount to a ruling denying defendant's motion, which preserves the sanction issue for appeal.

*II. The nunc pro tunc order.* In determining what had actually occurred in respect to the defendant's motion, we have referred to the nunc pro tunc order entered after appeal. The State maintains we may not properly do so, because nunc pro tunc orders are limited to correction of defects in judgments or to enter judgments when the ministerial act of doing so has been omitted. The rationale of the nunc pro tunc order is explained:

*An entry nunc pro tunc is an entry made now of something which was previously done, to have effect as of the former date*, the function, object, or purpose of such entry being to make the record speak the truth; to supply on the record something which has actually occurred, but has been omitted from the record through inadvertence or mistake. More specifically it has been held that the purpose of a nunc pro tunc entry is to correct mistakes of the clerk or other court officer, or inadvertances of counsel, or to settle defects or omissions in the record, *so that it will show what actually took place.*

21 C.J.S. *Courts* § 227, at 422–23 (1940) (emphasis added). "Literally nunc pro tunc means 'now for then.' A nunc pro tunc entry *makes the record show now what was actually done then.*" *McVay v. Kenneth E. Montz Implement Co.*, 287 N.W.2d 149, 150 (1980) (emphasis added). *Accord State v. Onstot*, 268 N.W.2d 219, 220 (Iowa 1978). In *Wirtanen v. Provin*, 293 N.W.2d 252, 255 (Iowa 1980), we compared the dual function of nunc pro tunc orders: (1) to "show now what was done then" and (2) to supply the omission where no judgment had been entered due to a ministerial error or oversight by the court. The present case falls in the first category: the nunc pro tunc shows now what the court actually did then.

While nunc pro tunc orders have not been used to show rulings of the court during trial to the extent they have been used to correct defects in judgments, the "now for then" rationale of the rule supports such use. Our cases do not suggest the concept is limited to judgment-defect cases as the

State suggests. We have approved the use of nunc pro tunc orders to show the correct ruling on *post*-trial motions and we see no rational basis for distinction. For example, in *State v. Frey*, 206 Iowa 981, 221 N.W. 445 (1928) the defendant had filed motions for new trial and in arrest of judgment. The judge wrote on the calendar, by mistake, that the motions were "sustained." That entry was then placed in the permanent court record. Upon application, the court entered a nunc pro tunc order correcting the entry. The true ruling, a denial of the motions, was inferred from the fact the defendant was committed to the reformatory after the ruling. The court held that "the court had the power to make the nunc pro tunc entry.... Thus it appears that the motion for new trial and renewed motion in arrest of judgment ... were over-ruled." *Id.* at 984, 221 N.W. at 447.

A nunc pro tunc order has even been used to supply matters *collateral* to the evidence and rulings. *See Hofacre v. Monticello*, 128 Iowa 239, 241–44, 103 N.W. 488, 489 (1905). In *Hofacre*, an agreement of counsel had been made that the certificate of only one court reporter would suffice, despite the fact the notes had, in fact, been taken in part by another reporter. Under the rules at that time, the reporter's notes, if certified, constituted the record. The lawyers' agreement as to certification was not entered of record when it was made. When the omission was discovered, the appellant requested and received a nunc pro tunc order entering the agreement in the record.

In acknowledging the authority of the court to enter the order, this court said:

Courts have inherent power to make orders *nunc pro tunc*, and they are not limited by these special statutes as to time when application may be made. Such an entry, of course, assumes that an act was done at a particular time, which never got of record in the proper books; and the entry is finally made now for then. If there was no act done, then, of course, there can be no entry *nunc pro tunc*. If the act was in fact done, but the proper evidence thereof is wanting, it

may subsequently be supplied so as to relate back to the time when the act was in fact done.

*Id.* at 243, 103 N.W. at 489.

■ We conclude the court here properly entered the order, nunc pro tunc, which showed what had actually been done at ᴜrial. Lest the ruling be misunderstood, we are not approving the post-trial entry of a ruling which was not made at trial; this would be an impermissible use of such orders. Here there had been a ruling at trial, although only by implication, and the nunc pro tunc order is considered only insofar as it shows that fact. We do not consider it a post-appeal ruling with retroactive effect.

■ *III. The sanction ruling.* Having decided the issue was preserved, we reach the merits of Walker's appeal: the propriety of ordering preclusion of his proffered evidence. We addressed that issue in *State v. Marchellino*, 304 N.W.2d 252 (Iowa 1981) and concluded such sanction may not be imposed for violation of rule 12(3). This case must therefore be reversed and remanded.

REVERSED AND REMANDED.