IN THE MATTER OF THE ESTATE OF JOSEPH C. MYERS, Deceased. W. H. MYERS, Claimant, Appellant, v. MARY A. B. MYERS, Executrix.

**Evidence:** WHAT IS NOT SECONDARY. Where plaintiff, suing for the possession of a drug business as surviving partner, claimed that he had placed it in the hands of defendant's testator, under an agreement that he was to have an interest in the profits for his services, it was not error to allow defendant's witness, after testifying that she had read all the correspondence between testator and plaintiff, to testify in the negative, over objection, in answer to defendant's question whether any business matter was mentioned in any of plaintiff's letters to testator, except one read to the jury in which plaintiff had

asked to borrow money, since such question did not call for the contents of the letters, but only for their subject matter, which was admissible for the purpose of identification.

HARMLESS ERROR. It appearing that another witness was permitted, without objection or contradiction, to testify to the same fact, error, if any, in admitting the testimony was harmless.

BOOKS AND PAPERS. Where plaintiff sued to recover a drug business, which he claimed he had instrusted to his brother under an agreement that the brother was to receive a share of the profits for conducting the business, which the brother's executrix claimed had been purchased from plaintiff, the books and papers used therein were admissible to show the manner of conducting the business.

HARMLESS ERROR. Though it was error to allow decedent's executrix to introduce an item in the ledger used in the business which plaintiff claimed to have intrusted to her decedent, and which the executrix claimed he had purchased from plaintiff, for the purpose of showing cash payment to him, such error was harmless, where plaintiff admitted receiving the money.

RELEVANCY. In an action to recover possession of a drug business, it was error to refuse to allow plaintiff to answer the question what he did with the business when he removed to another state, though he admitted that defendant's testator was in apparent charge thereof after his removal, since the *supervision* of the business might have been intrusted to another person.

CROSS-EXAMINATION. Where plaintiff claimed that he left a valuable stock of drugs with his brother on removing from the state, under an arrangement by which the brother was to share in the profits in return for his services, it was not error to allow defendant to ask plaintiff, on cross-examination, whether he had not run off to another state, leaving attached property, since such evidence tended to show plaintiff's financial condition at the time of removal.

SAME. Where, in an action to recover a stock of goods which plaintiff claimed he had left in the possession of defendant's testator, plaintiff had testified that he had sold his horse, and that his buggy had been stolen, it was error to allow defendant to ask him if he was not the man that stole the buggy, and whether it had not been so charged at the time, since such question was irrelevant and prejudicial.

SAME. Where plaintiff sued to recover a drug business, an interest in which defendant claimed her testator had purchased

at the time of plaintiff's removal from the state, it was error to allow defendant, on cross examination, to ask plaintiff's witnesses, testifying that testator had no means at that time, if testator had not advanced money to their husbands; it appearing that the money had been advanced by him some years' after the date of the alleged purchase.

**Appeal:** DENIAL IN ARGUMENT. A denial of the correctness of appellant's abstract in the argument on appeal will not be considered.

SHOWING ERROR TO BE PREJUDICIAL. Though the appeal record in an action against a decedent's estate showed that an objection had been made and sustained to the testimony of plaintiff's wife at the close of her direct examination, on the ground that she was incompetent to testify to personal transactions with the decedent, yet where her testimony was permitted to stand, and the ruling was not made effective, plaintiff showed no prejudice thereby.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

TUESDAY, MAY 22, 1900.

APPELLANT filed in the court below a petition for an order on the executrix to turn over to him certain property of the estate, consisting of a stock of drugs, paints, wall paper, etc. Defendant holds said property under the will of her deceased husband, J. V. Myers, as a part of his estate. Plaintiff claims a co-partnership with J. V. Myers, and seeks to obtain possession as surviving partner. There was a trial to jury, verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*Preston & Moffit* and *Rickel & Crocker* for appellant.

*C. W. Kepler* for appellee.

WATERMAN, J.—The denial of appellant's abstract is not sufficiently specific to put its correctness in issue. We

cannot regard denials made in argument. *McGillivray v. Case*, 107 Iowa, 17. A brief recital of some of the facts, together with the claims of the respective parties, will shed light on the points presented. The drug business was carried on in Mt. Vernon, in this state, originally in the name of Myers Bros. Plaintiff, who is a brother of J. V. Myers, formerly resided there, but since the year 1877 has lived in Nebraska, and from that time up to his brother's death, in 1896, was in Mt. Vernon but twice, the last time in 1880, and on each occasion made but a brief stay. He claims that he owned the stock in trade; that J. V. Myers at first clerked for him, and that the trade name of Myers Bros. was one which he assumed. When he left Mt. Vernon, in 1877, as he asserts, he placed the business in charge of his brother, giving him an interest in the profits in return for his services. On the other hand, defendant asserts that her husband had a interest in the stock as a partner during the period the business was conducted in the name of Myers Bros., and she claims that at the time plaintiff removed to Nebraska she purchased his interest in the business which has since been conducted under the firm name of J. V. Myers & Co., she being the unnamed member of the firm. With this introductory statement, we pass to a consideration of the errors assigned.

I. One Kittie B. Spring, examined on behalf of the executrix, testified that she was in charge of the store since 1882; that she had access to books and papers, and had read all correspondence between plaintiff and J. V. Myers. She was then asked this question: "I will ask you to state whether in any of those letters received by J. V. Myers from his brother Wesley any matter of business was mentioned save and except this letter that he writes asking to borrow money, that I have just read to the jury?" Over plaintiff's objection, this was answered in the negative. It is urged here that the letters were the best evidence of their contents. This question does not call for

the contents of the letters, but only for their subject-matter, presumably for the purposse of identification. For this purpose it was admissible. *Rosenberger v. Marsh,* 108 Iowa, 47; *State v. Seymore,* 94 Iowa, 699; *Hagan v. Insurance Co.,* 81 Iowa, 321-333. The period included by this question covered a number of years. Quite likely the letters were numerous. There is no rule of law that required the submission of each of them to the jury in order to determine whether it contained anything relevant to the case. Furthermore, another witness for the defendant was permitted, without objection to testify to this same fact, and the testimony is uncontradicted; so the error, if there was one, was without prejudice.

II. Plaintiff's wife was a witness in his behalf, and at the close of her direct examination objection was made to her testifying, on the ground that she was incompetent to testify to personal transactions with the deceased. The record shows that the objection was sustained, but the testimony given was permitted to stand. The ruling does not seem to have been made effective in any way, and plaintiff was therefore not prejudiced, if, as claimed, the testimony was admissible.

III. Plaintiff was asked, when on the witness stand, what he did with the drug store when he went to Nebraska. The question was ruled out on objection. The witness should have been allowed to answer. While it is admitted that J. V. Myers was in apparent charge of the store after plaintiff left it may be that supervision of the business was given, or claimed to have been given, to some other person. In the partial answer made to the question, it appears that this was the case.

IV. On cross-examination plaintiff was asked whether he had not run off to Nebraska in 1876, leaving some property, which was attached. His reply was that he did not run off, but that a team of horses was attached. The testimony was not objectionable, under the peculiar circumstances of this case. It tended to show plaintiff's

financial condition at a time when he permanently removed from the state, leaving, as he now insists, behind him, a valuable stock of goods. But there was no warrant for another portion of the cross-examination to which objection was made. Plaintiff had said he sold his horses, and that his buggy was stolen. He was then asked: "Wasn't you the man that stole it, and was so charged at the time?" The matter was wholly irrelevant, and the reflection upon the witness must have been prejudicial.

V. It was a part of plaintiff's case to show that J. V. Myers had no means at the time it is claimed he purchased an interest in the stock of goods in question. Two witnesses (Clingman and Giddings) testified to this fact. On cross-examination, defendant's counsel was permitted to ask them if J. V. Myers had not advanced considerable money to their husbands for certain purposes. Had these transactions related to the time when the stock is claimed to have been purchased, the evidence would have been admissible, but it had reference to matters occurring some years later, and should therefore have been excluded.

VI. We may dispose of most of the objections to the reception in evidence of books of account by saying that it was proper for defendant to show in what manner and in whose name the business was in fact conducted. One ledger item showing a cash payment made by J. V. Myers for plaintiff was introduced over plaintiff's objection. It is insisted that a merchant's books of account are not ordinarily competent to show a payment of money. If the receipt of this evidence was erroneous, it worked no prejudice; for plaintiff admitted decedent had paid the money. We may add here, to cover other points raised, that none of the books or papers were offered to establish an account against plaintiff, but only to show the manner in which the business was carried on. Had Myers been alive, he could have testified to this fact; being dead, we cannot see why the books may not speak for him to the same effect. We need not

notice specially the other objections made to the evidence; none of them seem to us well taken. Some other exceptions are argued, but, as they relate to matters which are not likely to arise on another trial, we do not feel called upon to specially notice them. For the reasons given, the judgment is REVERSED.