**STATE of Iowa, Appellee,**

v.

**Benjamin Franklin CRAWFORD, Appellant.**

**No. 55624.**

Supreme Court of Iowa.

Nov. 15, 1972.

Walter W. Rothschild, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and David Dutton, County Atty., Waterloo, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Defendant appeals his conviction for rape of a 13 year old girl. We affirm.

An extended factual recital is unnecessary. The jury could have found from the

evidence prosecutrix left her home in an automobile driven by defendant's male companion on a cigarette-buying errand. Defendant, age 23, at that time was hidden in the back seat. All concede the car was driven to the country. There, according to prosecutrix, she was raped by each man while the other held her.

Prosecutrix was driven back to her home. Several witnesses variously described her condition there as trembling, frightened, upset, crying and sobbing. Her sister testified that prosecutrix, upon entering the house, complained of what the men had done. Over defendant's hearsay objection, the sister was permitted to relate details of the incident then told her by prosecutrix.

On rebuttal following defendant's testimony the State called a member of the Waterloo police department who testified he had been a department member for seven years and a detective for four years. Foundation was laid for testimony concerning defendant's general reputation in the community for truth and veracity.

Before this witness gave his ultimate answer, defense counsel sought and obtained permission for voir dire examination. The detective was asked for names of persons making comments about defendant's truth and veracity. He named two people who had so commented. He testified three other persons had made such remarks to him but refused to identify them because they were informants. Defense counsel requested trial court to instruct the witness to give their names. Trial court "overruled" the request, holding the witness was not obliged to disclose the names of his informants.

The detective thereafter testified (without objection) defendant had a general reputation for truth and veracity in the community and that it was bad. Defendant made no motion to strike this evidence.

During cross-examination of this witness and in the absence of jury the State moved that defendant be ordered not to refer to a reprimand received by the witness, on the ground this would be an improper way to impeach him. Defense counsel acknowledged, "I intend to ask the witness if during his period of employment on the Waterloo Police Department he was at any time suspended for conduct unbecoming an officer, for drinking while on duty or frequenting a place of business that sells intoxicating beverages, being the premises while on duty and after closing hours." The reason assigned by counsel for this proposed question was "it goes to his credibility." The motion of the State was sustained and the question was not put to the witness.

For reversal, defendant chiefly relies on three alleged errors of trial court: 1) in admitting prejudicial hearsay testimony not part of the res gestae, 2) in failing to require State to disclose names of "informants," and 3) in not permitting defendant to attack the police detective's credibility by inquiring into an alleged suspension.

1. *Admissibility of testimony as part of the res gestae.*

■ The admissibility of statements as being part of the res gestae is largely within trial court's discretion. State v. Redding, 169 N.W.2d 788 (Iowa 1969); Dohse v. Market Mens Mutual Insurance Company, 253 Iowa 1186, 115 N.W.2d 844 (1962). The trend is to extend, rather than to narrow, the res gestae doctrine. Roushar v. Dixon, 231 Iowa 993, 2 N.W.2d 660 (1942).

■ The statements of prosecutrix, testified to by her sister, meet the res gestae admissibility standards we have adopted. These are (1) spontaneity, and (2) such closeness of connection with the transaction as to exclude any presumption of fabrication. The following cases, which are factually comparable and apply these standards, are controlling here and persuade us to hold trial court did not abuse

its discretion in overruling defendant's objection: State v. Smith, 195 N.W.2d 673 (Iowa 1972); Gibbs v. Wilmeth, 261 Iowa 1015, 157 N.W.2d 93 (1968); State v. Miller, 254 Iowa 545, 117 N.W.2d 447 (1962).

## II. *Nondisclosure of informants.*

■ Ordinarily a witness testifying to the reputation of another witness may be required on cross-examination to identify the persons whom he has heard make statements unfavorable to the reputation of the person in question, and he may be interrogated as to what each person said. In re Monaghan, 126 Vt. 53, 222 A.2d 665 (1966); 4 Jones on Evidence § 954, pp. 1795–97 (5th ed. 1958); 4 Wigmore on Evidence § 1111, pp. 184–87 (3rd ed. 1940); see Hofacre v. City of Monticello, 128 Iowa 239, 103 N.W. 488 (1905); State v. Allen, 100 Iowa 7, 69 N.W. 274 (1896); Albertson v. Commonwealth, 312 Ky. 68, 226 S.W.2d 523 (1950); State v. Polhamus, 106 N.E.2d 646 (Ohio App.1951).

Wigmore, however, indicates this rule may be modified when the privilege against disclosing an informer's name is invoked. 4 Wigmore on Evidence § 1111, *supra* at p. 187.

In this case the above two rules are in head-on collision.

■■ We have recognized the privilege accorded the prosecution to withhold identity of persons who furnish to police officers information relating to law violations. The privilege rests on sound public policy and seeks to further and protect the public interest in effective law enforcement. State v. Battle, 199 N.W.2d 70 (Iowa 1972). While no fixed rule may be laid down, the privilege may be required to yield where disclosure is required in order for defendant to prepare his defense. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The burden for showing need for disclosure is on the defendant. State v. Battle, supra.

The unidentified informers may or may not have been involved in defendant's recent conviction of robbery without aggravation, referred to in the record. There is no indication they had any connection with this charge of rape. Defendant made no claim at trial their identity was required for his defense preparation. He relied solely on the liberal cross-examination rule to overcome the privilege against disclosure.

■ Frequently the privilege is granted although the informer has furnished some information relating to the defendant's alleged criminal activity. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Riley v. United States, 411 F.2d 1146 (9 Cir. 1969); United States v. Franzese, 392 F.2d 954 (2 Cir. 1968), vacated on other grounds sub nom. Giardano v. United States, 394 U.S. 310, 89 S. Ct. 1163, 22 L.Ed.2d 297 (1969). The case before us involves an even more remote connection on a collateral matter—the impeachment of an impeachment witness. See Hofacre v. City of Monticello, 128 Iowa 239, 103 N.W. 488 (1905). We may assume the three informers were valuable in effective law enforcement by the Waterloo police department. Had the detective been forced to divulge their identity their usefulness for that purpose would have ended. Even if identified, defendant, under the present state of our case law, could not have called them to impeach statements of the witness in this collateral area. State v. Brooks, 181 Iowa 874, 165 N.W. 194 (1917); Hofacre v. City of Monticello, supra; Robbins v. Spencer, 121 Ind. 594, 22 N.E. 660 (1889); 4 Jones on Evidence § 954, at p. 1796 (5th ed. 1958).

■ Balancing the public policy favoring the nondivulgence privilege against the rule for testing collateral testimony by cross-examination, we hold in this instance the first rule outweighs the second and should prevail. Trial court did not abuse its discretion in refusing to require the witness to name the informants.

III. *Attacking credibility of witness.*

Most troublesome of the assigned errors is trial court's refusal to permit the suspension question to be put to the detective witness. No one contends the alleged unprofessional conduct was relevant to the issues in this case. The sole function of the proposed question (on a purely collateral matter) was to assail the credibility of the witness. Time of the alleged suspension was not fixed: It could have occurred approximately seven years prior to this detective's appearance on the witness stand. Had the proposed question been answered in the affirmative, the nature of the disclosed misconduct would have had little bearing on the issue of the detective's inclination to be truthful under oath.

In any such situation, issues of sound public policy, professional conduct and judicial discretion are necessarily involved. No clear rule emerges from our decisions (nor from decisions of other jurisdictions) to help find the dim line where evidence which in an important and material way bears directly on the veracity of the witness fades into that evidence which has little bearing on that factor but excites prejudice against the witness and needlessly besmirches and degrades him.

One legal writer has pinpointed the sound public policy which must be considered:

"It is possibly not the most important duty of the counsel to remember that (in the words of a considerate court) 'witnesses have rights as well as parties; it is too often the case that they are set up as marks to be shot at.' But it certainly is the duty of the law and of the judges to see that due regard is paid to these rights, and that the witness box does not unnecessarily become, in the words of an old Southern judge, 'the slaughterhouse of reputations.' * * *

" * * * [W]ith the prospect of such an examination as a possibility, the public is certain to dread the witness box. From time to time those whose knowledge would have been valuable will seek to evade disclosing it; the ascertainment of the truth will be hampered and perhaps prevented. That such a feeling exists today, in a greater or less degree, can hardly be doubted."—3A Wigmore on Evidence § 983, at p. 841 (Chadbourn rev. 1970).

In a similar vein, McCormick on Evidence (2d ed. 1972) has this observation in § 41, at p. 82:

"It seems probable, moreover, that the tendency is to use this form of attack more and more sparingly. It was part of the melodrama of the pioneer trial to find 'the villain of the piece.' It fits less comfortably into the more businesslike atmosphere of the present courtroom. * * * Finally, judges and lawyers are more and more conscious of their duty of fairness to witnesses. The Code of Professional Responsibility of the American Bar Association states the matter thus:

\* \* \* \* \* \*

'In appearing in his professional capacity before a tribunal, a lawyer shall not:

(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person. * * *.' "

The disciplinary rule alluded to in McCormick was adopted by the Iowa Supreme Court as DR 7–106(C)(2) in The Iowa Code of Professional Responsibility for Lawyers (1971).

On the statutory level, § 610.14, The Code, provides:

"It is the duty of an attorney and counselor:

\* \* \* \* \* \*

(5) To abstain from all offensive personalities, and to advance no fact preju-

dicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged."

Where an attempt is made to put the credibility of a witness in issue by cross-examination concerning alleged facts which if true might be relevant to that issue, the determination of admissibility must include consideration of broad public policy and these salutary rules. In indicating these factors which must partially govern the exercise of trial court's discretion we do not intimate in this instance defense counsel was in bad faith or violated any professional rule or statute.

Three types of rules have been adopted relating to the admissibility of acts of misconduct on a cross-examination to attack the credibility of a witness: (1) an extreme rule imposing no limitations of any kind upon such examination; (2) a rule obtaining in most jurisdictions of the United States, in which repression of possible abuses is left to the discretion of the trial judge and questions upon facts relevant to character may still be forbidden by him where he believes under the circumstances it is unnecessary and undesirable; (3) a third rule entirely prohibiting such cross-examination. 3A Wigmore, Evidence § 983, pp. 840–851 (Chadbourn rev. 1970).

■ Although a few Iowa decisions, separately considered, might categorize this jurisdiction as following the first or third rule, a wide sampling of our cases will demonstrate this State follows the second (majority) rule. We have repeatedly held admissibility of specific acts of misconduct on cross-examination to attack credibility is within trial court's discretion and will be disturbed only when such discretion has been abused. State v. Broten, 176 N.W.2d 827 (Iowa 1970); Gaskill v. Gahman, 255 Iowa 891, 124 N.W.2d 533 (1963); State v. Johnson, 215 Iowa 483, 245 N.W. 728 (1932).

Many of our decisions have either upheld trial court's discretion in limiting cross-examination concerning specific acts of alleged misconduct, or have reversed trial court for abusing that discretion by permitting such questions. Among these are State v. Collins, 246 Iowa 989, 69 N. W.2d 31 (1955) (questions concerning time at training school at Eldora, some 13 years prior to testimony erroneously permitted); State v. Comes, 245 Iowa 485, 62 N.W.2d 753 (1954) (allowing questions relating to surveillance by police in 1939, giving false address to police, history of difficulties with checks, attempting to influence dismissal of criminal proceeding, and conducting business under a trade name not properly registered constituted error); Jettre v. Healy, 245 Iowa 294, 60 N.W.2d 541 (1953) (no error in restricting examination of patrolman as to whether it was part of his job to help attorneys prepare cases for civil trial); State v. Johnson, 215 Iowa 483, 245 N.W. 728 (1932) (not error to exclude question whether witness had been engaged in committing larcenies and burglaries and bootlegging); State v. Shields, 195 Iowa 1360, 192 N.W. 521 (1923) (not error to restrict questioning as to whether witness burned house to recover insurance, lived with men other than her husband, had been running a bootlegging and assignation house); State v. Dillman, 183 Iowa 1147, 168 N.W. 204 (1918) (questions concerning fights and misconduct several years prior to trial erroneously permitted); Germinder v. Machinery Mut. Ins. Ass'n, 120 Iowa 614, 94 N.W. 1108 (1903) (permitting question whether witness had been accused of burning a barn clearly erroneous); In re Myers' Estate, 111 Iowa 584, 82 N.W. 961 (1900) (question whether witness had "stole" his own buggy and was so charged erroneously allowed); Madden v. Koester, 52 Iowa 692, 3 N.W. 790 (1879) (questions concerning alleged participation in a collateral fraud transaction erroneously permitted).

Defendant places great reliance on In re Thorman's Estate, 162 Iowa 237, 144 N.W. 7 (1913). There, proponents of a lost will relied solely on testimony of a former at-

torney. This court held there was no error when on cross-examination the witness was required to answer over objection whether he had been disbarred from practice and whether he had been reinstated. Defendant ignores two important distinctions between that factual situation and the one confronting us on this appeal. In *Thorman*, trial court exercised its discretion in permitting the examination. In this case, discretion was exercised in restricting cross-examination. In both cases the ruling was within the area where trial court's discretion may permissibly range. Secondly, in *Thorman* the question was directly relevant to an issue in the case concerning the professional competency of the witness. The opinion in *Thorman*, 162 Iowa at 243, 144 N.W. at 9 states, "Here the witness was testifying to the performance of professional work, and it was proper on cross-examination to elicit whether he was still engaged in the practice of his profession and, if not, the occasion for his discontinuance."

In the case now before us, testimony concerning defendant's reputation could have been (and probably should have been) elicited from one not a member of the police department. Such evidence is not limited to expert testimony nor necessarily confined within the professional competency of a policeman. Further, this detective, so far as the record discloses, had never in his seven years of service ceased to be a member of the department. The facts of this case distinguish it from the *Thorman* situation.

We hold trial court did not abuse its discretion in prohibiting examination of this witness relative to the alleged suspension from duty.

In so holding, we do not retreat from our rule that pertinent cross-examination is a valuable right essential to a fair trial and is to be jealously guarded. Wheatley v. Heideman, 251 Iowa 695, 102 N.W.2d 343 (1960); State v. Christy, 198 Iowa 1302, 201 N.W. 42 (1924). We simply apply our deep-rooted common law recognizing trial court's discretion to define the ambit of permissible cross-examination in an attack on the credibility of a witness by questions concerning collateral acts of alleged misconduct.

We have examined the record and find other assignments of error are without merit. Defendant received a fair trial. His conviction is affirmed.

Affirmed.

RAWLINGS, J., concurs in result.