# IN THE COURT OF APPEALS OF IOWA

No. 17-0091
Filed February 21, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JOSHUA JARRETT,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Buchanan County, Bradley J. Harris, Judge.

      Defendant appeals his convictions and sentences for sexual abuse in the second degree and sexual abuse in the third degree. **AFFIRMED.**

      Clemens A. Erdahl II of Nidey Erdahl Fisher Pilkington & Meier, P.L.C., Cedar Rapids, and Eric D. Tindal of Keegan and Farnsworth, Iowa City, for appellant.

      Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

      Considered by Potterfield, P.J., McDonald, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Joshua Jarrett appeals his convictions and sentences for sexual abuse in the second degree and sexual abuse in the third degree, following a jury trial and guilty verdicts.[1] He asserts the trial court erred (1) in denying admission of the video-recorded interview of the complaining witness; (2) in failing to grant his motion for judgment of acquittal based upon insufficient evidence and lack of corroboration of the victim's sexual assault testimony; (3) in incorrect evidentiary rulings, which denied him the opportunity to present his theory of defense; and (4) in failing to grant his objections during closing arguments that the prosecutor engaged in a *Graves* violation by placing the burden on Jarrett to prove the complaining witness had lied. Based upon our review of these claims, we find no error and affirm.

I.      Procedural background.

On September 12, 2014, Jarrett was charged by trial information with four counts of sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3(2) (2014)[2]; four counts of sexual abuse in the third degree in violation of Iowa Code section 709.4(2)(b); and flight to avoid prosecution in violation of Iowa Code section 719.4(4). Before trial, the State amended the trial information to allege one count of sexual abuse in the second degree (count I), one count of sexual abuse in the third degree (count II), as well as the flight to

---

[1] Jarrett was also convicted of fleeing from the state to avoid felony prosecution. He does not specifically appeal that conviction or sentence.

[2] The underlying acts were alleged to have occurred "on or between February 1, 2002 and February 19, 2008." Because there was no substantive change to the pertinent Code sections between the date of the alleged acts and the filing of the first trial information, we reference the 2014 Code throughout.

avoid prosecution (count III). On October 26, 2015, a jury returned guilty verdicts as to all three counts submitted to it.

Jarrett filed a motion for new trial and, following a hearing, the motion was denied. He was sentenced to twenty-five years on count I; ten years on count II; and five years on count III. The court ordered counts I and II to be served consecutively and count III concurrently with counts I and II. Jarrett then timely filed a notice of appeal.

II.     Factual background.

H.K. was known to Jarrett through H.K.'s mother. H.K.'s father is deceased; he died when H.K. was six years old. According to H.K., Jarrett first made her manually stimulate him shortly after her father's death. H.K. did not tell her mother about this incident because Jarrett told her not to. On another occasion, when H.K. was eight years old, Jarrett made her perform oral sex on him. Again, H.K. did not disclose the abuse to her mother because Jarrett told H.K. not to and because she did not want her mother to be upset.

The sex acts that Jarrett made H.K. perform eventually progressed from manual and oral stimulation to anal and vaginal intercourse. If H.K. resisted, Jarrett would "be terrible" to H.K.'s mother afterwards. Jarrett initiated sexual encounters with H.K. more frequently as she grew older. At trial, when asked how many times Jarrett had sexual contact with her, H.K. responded it was "way too many to count."

When H.K. was in fifth grade she was provided a cell phone. Jarrett began to initiate sexual contact by sending H.K. text messages after her bedtime. H.K. testified about the content of the messages, stating they would say, "'Come meet

me after your mom is asleep' or 'Come meet me in the living room' or 'Come meet me' wherever."

According to H.K., one night, when she was fourteen, Jarrett sent her a text message after her bedtime to "[c]ome get me after your mother is asleep." H.K.'s mother saw H.K.'s phone light up when she received that message, and the mother grabbed the phone from H.K.'s hand. The mother read the text message, along with all of the other text messages from Jarrett to H.K. that told her to meet him after bedtime in various locations. H.K.'s mother and H.K. had a conversation outside of Jarrett's presence; H.K. told her mother that "since the age of 6 . . . he would make [her] have vaginal, anal, and oral sex with him and that he would make [her] masturbate him." H.K. was crying throughout her disclosure, and her mother was also upset. The mother confronted Jarrett. No one reported the abuse. H.K.'s mother made sure Jarrett was not alone with H.K., and Jarrett had no further sexual contact with H.K. from that point on.

H.K. reported the sexual abuse to law enforcement in August 2014. When Jarrett learned that the police were looking for him to investigate H.K.'s reports of sexual abuse, he fled from the state—to Kansas, North Carolina, Colorado, and finally Texas, where he was apprehended.

At trial, H.K.'s mother denied that H.K. had disclosed the sexual abuse when she caught Jarrett sending her the text message. Even so, she acknowledged that after that incident, she did not allow Jarrett and H.K. to be alone together. Jarrett did not deny that he sent the text messages to H.K. and also did not deny that H.K.'s mother confronted him about it, but he claimed he told her "it was nothing" and she should "just let it go."

At trial, the defense sought to introduce evidence concerning H.K. being suicidal and under the influence of drugs and alcohol when she first told about the sexual abuse. The court did not allow the evidence on the basis that it was irrelevant. The defense also attempted to question H.K. about her false claim to her employer that she had a brain tumor and needed to visit relatives in Davenport rather than be at work, but the court sustained the prosecution's objection and disallowed the question.

During the State's closing and rebuttal arguments, defense counsel objected that the prosecutor was violating the *Graves* case and shifting the burden of proof to Jarrett. The court overruled the objections. The defense raised the issues again in its motion for new trial, which the court denied.

Additional facts will be discussed when relevant.

III.    Discussion.

A. Whether the trial court erred in denying admission of the previously video-recorded interview of H.K.?

In late 2010, the Iowa Department of Human Services (DHS) investigated a report by a female juvenile regarding sexual abuse by Jarrett. Arising out of this investigation, in January 2011, the Child Protective Center (CPC) conducted a video-recorded interview with H.K. During the interview, H.K., who was fourteen years old at that time, denied any sexual abuse by Jarrett. H.K. testified at Jarrett's trial during the State's case-in-chief and described the years of sexual abuse by Jarrett. Jarrett's defense counsel did not attempt to offer or cross-examine H.K. about her video-recorded CPC interview in which she had denied the abuse by Jarrett.

Before trial, the defense gave notice that it intended to call Dr. Katherine Jacobs as an expert witness to testify generally about adolescent witness memory and testimony. On the evening before Dr. Jacobs was to testify, after H.K. had testified and the State had rested, defense counsel sent an email to the prosecutor that the defense intended to offer H.K.'s video-recorded CPC interview through Dr. Jacobs, citing to the residual-hearsay exception in Iowa Rule of Evidence 5.807. The next morning, before Dr. Jacobs testified, the State filed a motion in limine to prevent the doctor from testifying about H.K.'s recorded interview. Before recommencing trial and Dr. Jacobs's testimony, the court held a hearing on the motion in limine, at which Dr. Jacobs testified.

At the hearing, the State argued it would be improper to allow evidence of H.K.'s recorded interview through Dr. Jacobs without having confronted H.K. with the interview and allowing her an opportunity to explain her denial of the abuse; H.K. maintained her mother had told her to deny Jarrett had abused her because telling the truth would break up the family. The defense filed a resistance and argued the recorded interview was admissible under the residual hearsay exception in Iowa Rule of Evidence 5.807 and was necessary to Dr. Jacobs's opinions on adolescent memory.

Following the hearing, the trial court granted the State's motion in limine, ruling the defense would not be allowed to play H.K.'s video-recorded interview to the jury as part of Dr. Jacobs's testimony. The court further ruled the doctor could testify as to the potential influence of prior CPC or DHS interviews on H.K., but she could not testify as to any of the content of H.K.'s recorded interview. The court based its ruling on the defense's failure to comply with evidence rule 5.807 as to

necessity and timely notice. Following this ruling, the defense decided not to have Dr. Jacobs testify at the trial.

Both parties now agree this limine ruling preserved the issue for appeal. *See State v. Daly*, 623 N.W.2d 799, 800 (Iowa 2001) (reiterating that error is preserved "where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation the decision on the motion has the effect of a ruling" (quoting *State v. Tangie*, 616 N.W.2d 564, 568–69 (Iowa 2000))).

We generally review a district court's decision to admit or exclude evidence for abuse of discretion. *State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003). However, we review hearsay claims for correction of errors at law. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009).

Jarrett argues the trial court erred in not allowing his counsel to play H.K.'s video-recorded interview for the jury during Dr. Jacobs's testimony.[3] He contends the video was admissible under Iowa Rule of Evidence 5.807, the residual-hearsay exception, or Iowa Code section 915.38(3), which reads:

> The court may upon motion of a party admit into evidence the recorded statements of a child, as defined in section 702.5, describing sexual contact performed with or on the child, not

---

[3] We note that neither at trial nor in this appeal does counsel make an argument that the video-recorded statement was admissible under Iowa Rule of Evidence 5.703. *See In re Det. of Stenzel*, 827 N.W.2d 690, 705 (Iowa 2013) (noting "rule 5.703 is intended to give experts appropriate latitude to conduct their work, not to enable parties to shoehorn otherwise inadmissible evidence into the case").

otherwise admissible in evidence by statute or court rule if the court determines that the recorded statements substantially comport with the requirements for admission under rule of evidence 5.803(24) or 5.804(b)(5).[4]

Admissibility thus rests on compliance with Iowa Rule of Evidence 5.807. We agree with the trial court that under this record the defense failed to meet the requirements necessary for admission of the video recording.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Iowa R. Evid. 5.801; *see also State v. Shortridge*, 589 N.W.2d 76, 82 (Iowa Ct. App. 1998). If evidence is hearsay, it must be excluded "unless admitted as an exception or exclusion under the hearsay rule or some other provision." *State v. Harper,* 770 N.W.2d 316, 319 (Iowa 2009) (citation omitted). The residual-hearsay exception is one such exception. *See* Iowa R. Evid. 5.807. Iowa has traditionally found that video-taped statements meet this test. *See, e.g.*, *State v. Rojas*, 524 N.W.2d 659, 663–64 (Iowa 1994). The Iowa Supreme Court has summarized the residual-hearsay exception as requiring a showing of "trustworthiness, materiality, necessity, service of the interests of justice, and notice." *Id.* at 662–63 (discussing residual-hearsay exception, then found at Iowa Rule of Evidence 5.803(24)).

Here, as to necessity, the trial court found that the in-court testimony of H.K. and her availability for cross-examination eliminated the necessity of showing the video recording to the jury. This case presents a different scenario than previously

---

[4] Iowa Rules of Evidence 5.803(24) and 5.804(b)(5) have now been consolidated in rule 5.807.

addressed. In her recorded statement, H.K. denied Jarrett's abuse, but she testified at trial as to the abuse. In other cases, at trial the victim recants or denies the abuse, leaving the admission of the pretrial video-recorded statement as the only means by which the State can introduce the information it had received as to the abuse, thus fulfilling the necessity requirement. *See, e.g.*, *State v. Kone*, 562 N.W.2d 637, 638 (Iowa Ct. App. 1997). In *Kone*, this court found the recantation of the victim at or before trial established necessity. *Id.* Under the facts here, there was no necessity.

As to notice, the defense concedes it did not give timely notice as required by the rule. On appeal, Jarrett's counsel argues their own ineffective assistance in failing to give timely notice. Ineffective-assistance-of-counsel claims are generally preserved for postconviction proceedings but will be resolved on direct appeal "when the record adequately presents the issues." *State v. Thornton*, 498 N.W.2d 670, 675 (Iowa 1993). In order to succeed on a claim of ineffective assistance of counsel the defendant has the burden to show "(1) counsel failed to perform an essential duty and (2) prejudice resulted." *State v. Shanahan*, 712 N.W.2d 121, 136 (Iowa 2006) (citation omitted). Jarrett cannot establish prejudice on this point. As we have found above, the trial court properly determined the video-recorded statement did not meet the necessity requirement to be admitted under the residual-hearsay exception. Thus, even if timely notice had been given, the video-recorded statement would not have been admitted under the residual-hearsay exception.

Next, Jarrett argues Iowa Code section 915.38(3) is unconstitutional because it violates article I, section 9, of the Iowa Constitution, which guarantees

that "no person shall be deprived of life, liberty, or property without due process of law." He contends the statute works in only one direction—that it permits admission of a victim's prior recorded statement which "describes sexual contact performed with or on the child" but does not allow the admission of recorded statements of a child who denies sexual contact occurred. The trial court held that since H.K. in her recorded statement denied any abuse, she did not describe sexual contact and the recorded statement did not fall within the statute so as to be admissible.

As the State points out, Jarrett did not need to rely on section 915.38(3) for admission of H.K.'s prior recorded statement. Since H.K. testified at trial, the statement was admissible for impeachment as a prior inconsistent statement. *See* Iowa R. Evid. 5.613. Jarrett's counsel did not attempt to impeach H.K.'s testimony by cross-examining her about the prior recorded denial or by offering the recorded statement to impeach her trial testimony that the abuse occurred.

When evaluating the constitutionality of evidentiary rules based on due process considerations, "the traditional approach has been to invalidate an evidentiary rule when it 'violates those "fundamental concepts of justice which lie at the base of our civil and political institutions," which define "the community's sense of fair play and decency."'" *State v. Reyes*, 744 N.W.2d 95, 101 (Iowa 2008) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). Even though the statute here appears to only work one way—for admission of a prior recorded statement where the child has described sex acts by the defendant when that evidence is not otherwise available at trial—as becomes obvious under the facts of this case, if the child has previously denied the abuse but testifies at trial that

such abuse occurred, then the prior recorded statement is admissible for impeachment as a prior inconsistent statement. The statute need not work in the opposite direction because such recorded statements are admissible under other provisions of the rules of evidence—as prior inconsistent statements. Thus, there is no constitutional infirmity in section 915.38(3).

> B. Whether the trial court erred in failing to grant Jarrett's motion for judgment of acquittal based upon insufficient evidence and lack of corroboration of H.K.'s sexual abuse testimony?

Jarrett makes an impassioned plea that he should not be convicted on the unreliable, stale testimony of H.K. alone, which he claims was lacking in detail, not supported by any physical evidence, and, thus, insufficient to support a conviction. The standard of review for a claim of insufficient evidence is for correction of errors at law. *State v. Sanford,* 814 N.W.2d 611, 615 (Iowa 2012). The State's burden is met if "a rational trier of fact could have found that the elements of the crime were established beyond a reasonable doubt." *State v. Keopasaeuth*, 645 N.W.2d 637, 639–40 (Iowa 2002). A reviewing court should consider "all reasonable inferences that may be fairly drawn from the evidence" in support of the verdict. *State v. Showens*, 845 N.W.2d 436, 439–40 (Iowa 2014) (quoting *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013)).

Jarrett also contends constitutional due process, at the least, should require that H.K.'s testimony of the sexual abuse be corroborated to support a conviction. His argument is based on the statutory expansion of the statute of limitations in child sex abuse cases to ten years after the child reaches eighteen years of age. *See* Iowa Code §§ 802.2(1) (providing, in cases of sexual abuse "committed on or with a person who is under the age of eighteen," up to ten years after the minor

victim reaches age eighteen before the statute of limitations runs), 802.3 (providing general three-year statute of limitations); *see also State v. Walden*, 870 N.W.2d 842, 845–46 (Iowa 2015). Jarrett contends the extended limitations period for bringing such charges also allows for claims of multiple incidents of abuse over extended periods of time that are difficult to defend, in part, due to the loss of the defense's ability to produce evidence countering the allegations.

Jarrett's arguments are contrary to the historical development of the law in this area. Nearly 350 years ago Sir Matthew Hale, Lord Chief Justice of the King's Bench made the statement:

> It is true, rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent.

*State v. Feddersen*, 230 N.W.2d 510, 514 (Iowa 1975) (citation omitted). This commentary led to the statutory requirement of corroboration of the testimony of a rape victim originally found in Iowa Code section 13900, later re-numbered to 782.4. The statute was repealed in 1973. *See* 1973 Iowa Acts ch. 1271, § 2. Also, up until 1975, there was a uniform jury instruction that advised the jury that a claim of rape was easy to make and difficult to disprove. This instruction was disapproved of by the Iowa Supreme Court in *Fedderson*, 230 N.W.2d at 514–15, calling the instruction a discredited anachronism.

As a result of these developments, Iowa law allows a jury to convict a defendant of sexual abuse based solely on the uncorroborated testimony of the complaining witness: "A rape victim's accusation need not be corroborated by physical evidence." *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998);

*accord State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The law has abandoned any notion that a rape victim's accusation must be corroborated."); *Feddersen*, 230 N.W.2d at 515 ("In eliminating the requirement of corroboration of a rape victim's testimony, the legislature rejected this concept as a discredited anachronism. We now do likewise."). The law forecloses this claim.

Upon our review of the record, the testimony of H.K. was sufficient for a rational trier of fact to have found that the elements of the crime were established beyond a reasonable doubt. Jarrett's claim of insufficient evidence was properly rejected.

 C. Whether the trial court was incorrect in evidentiary rulings, which Jarrett claims denied him the opportunity to present his theory of defense?

Jarrett contends two of the court's evidentiary rulings during trial prevented him from introducing evidence concerning H.K.'s credibility, specifically: (1) H.K.'s condition (suicidal, under the influence of drugs and alcohol) when he contends she first told others about the sex abuse and (2) that H.K. had told her employer or people at her employment that she had a brain tumor when, in fact, she did not. The court sustained the State's relevance objections to both inquiries.

We generally review evidentiary claims for an abuse of discretion. *State v. Harrington*, 800 N.W.2d 46, 48 (Iowa 2011). A court abuses its discretion when its discretion is based upon an erroneous application of the law or is not supported by substantial evidence. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). In this case, Jarrett claims that the court's evidentiary rulings amount to a constitutional deprivation of his right to present the complete theory of his defense, citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), and the Sixth and Fourteenth

Amendments to the United States Constitution.[5] A review of *Crane* discloses a specific set of facts inapplicable here. There, a defendant moved to suppress his confession to police as involuntary. *Crane*, 476 U.S. at 685. After a hearing, the trial court ruled the confession was voluntary. *Id.* The defendant at trial sought to again attack the voluntariness of his confession, which the court denied, finding that the voluntariness issue had already been decided by the court. *Id.* at 686. The United States Supreme Court reversed, holding

> As the Court noted in *Jackson* [*v. Denno*, 378 U.S. 368, n.13 (1964)], because "questions of credibility, whether of a witness or of a confession, are for the jury," the requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial.

*Id.* at 688. In the case before us, Jarrett was permitted to challenge the credibility of his accuser, H.K., but within the framework of the rules of evidence dealing with credibility. We find the trial court rulings in this case do not rise to the level of a constitutional deprivation.

In this appeal, other than raising the constitutional challenge that he was prevented from presenting his complete theory of defense, Jarrett fails to argue or present legal authority on the substantive issue whether the trial court's evidentiary rulings were inconsistent with the rules of evidence dealing with credibility so as to constitute an abuse of discretion. Therefore, we may consider the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also State v. Olsen*, 794 N.W.2d 285,

---

[5] Jarrett also mentions article I, sections 9 and 10 of the Iowa Constitution.

287 n.1 (Iowa 2011) ("Because Olsen failed to raise this issue in his original brief, the issue is not preserved for our review.").

Nevertheless, we agree with the State. Generally, the credibility of a witness is always an issue and decided by the trier of fact. *State v. Weaver*, 608 N.W.2d 797, 804 (Iowa 2000) ("Determinations of credibility are in most instances left for the trier of fact, who is in a better position to evaluate it."). Jarrett attempted to offer evidence of specific acts. In *State v. Crawford*, 202 N.W.2d 99, 104 (Iowa 1972), the supreme court said, "We have repeatedly held admissibility of specific acts of misconduct on cross-examination to attack credibility is within trial court's discretion and will be disturbed only when such discretion has been abused." Such evidence may be admissible under Iowa Rule of Evidence 5.608(b), but it is still within the sound discretion of the court. *See State v. Smith*, 522 N.W.2d 591, 593 (Iowa 1994). "It is important to note the narrow scope of that rule. This part of rule 608 [now rule 5.608] permits cross-examination of a witness concerning a specific instance of conduct by the witness; it does *not* permit such conduct to be proved by extrinsic evidence." *State v. Greene*, 592 N.W.2d 24, 28–29 (Iowa 1999).[6] Further, our review discloses that Jarrett was allowed to ask H.K. about her emotional condition when she disclosed the sexual abuse to her aunt. The evidence also shows that H.K. had disclosed the abuse to three other persons before the disclosure to her aunt, so Jarrett's theory that the first disclosure was

---

[6] We also note here that, as to the question posed to H.K. about whether she was suicidal on the day she disclosed the sexual abuse to her aunt, Jarrett did not make an offer of proof regarding what H.K.'s answer would have been. Under *Green* the record is insufficient for us to consider the issue on appeal. 592 N.W.2d at 28.

the product of H.K.'s mental issues, drugs, or alcohol is not supported. We thus conclude the trial court's rulings were not an abuse of discretion.

> D. Whether the trial court erred in failing to sustain Jarrett's objections that the prosecutor engaged in a *Graves* violation by placing the burden on Jarrett to prove the complaining witness had lied?

During the State's closing argument, Jarrett's counsel objected on two occasions to statements made by the prosecutor.[7] Again, during the State's rebuttal argument, Jarrett's counsel objected.[8] All objections were that the prosecutor's argument constituted shifting the burden of proof to the defendant and violated the *Graves* case. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa

---

[7]      PROSECUTOR: And here's the thing: If she were untruthful, wouldn't it make sense—use your common sense here. All right. The judge tells you in the instructions that you can use your common sense. We don't ask you to check it on the coat rack outside.

When you're thinking about [H.K.'s] testimony and [H.K.'s]—you know, what she said happened to her over the eight years, the course of her childhood, about what Joshua Jarrett did to her, don't you think she could make up a lot better fabrication? If she's not bound by the truth— there's an old—

DEFENSE COUNSEL: Your Honor, I would like to enter an objection at this time. I believe that the prosecution is inject—is engaged in burden shifting, trying to put the burden on the defense to show why she would fabricate. We don't have to show—

. . . .

PROSECUTOR: And again, over the course of this trial, the course of H.K.'s testimony and all the other evidence in the case, you can look at a witness's motive. Right? What motive answers the why question; right? What motive was developed in the evidence that [H.K] fabricated anything? There was—

DEFENSE COUNSEL: Your Honor, again, I would interpose an objection. We don't have to prove a motive. That's shifting the burden to the defendant.

[8] The second interjection occurred as follows:

PROSECUTOR: That's what the testimony is in the case. Still, it goes back to [H.K.] and why would she fabricate something that didn't occur? There's no motive, again, that's been—

DEFENSE COUNSEL: Your Honor, I would make the same objection.

2003) (holding prosecutorial misconduct denies the defendant a right to a fair trial under Fourteenth Amendment due process framework).

A trial court has broad discretion in ruling on claims of prosecutorial misconduct; therefore, our review is for abuse of discretion. *Thornton*, 498 N.W.2d at 676 (citing *State v. Erving,* 346 N.W.2d 833, 836 (Iowa 1984); *State v. Lass,* 228 N.W.2d 758, 770 (Iowa 1975)).

"To prevail on a claim of prosecutorial misconduct, the defendant must show both the misconduct and resulting prejudice." *State v. Neiderbach*, 837 N.W.2d 180, 209 (Iowa 2013). "Prosecutorial misconduct only warrants a new trial when the conduct is 'so prejudicial as to deprive the defendant of a fair trial.'" *State v. Bowers*, 656 N.W.2d 349, 355 (Iowa 2002) (quoting *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989)).

Our reading of the trial transcript leads us to the same conclusion as that found by the trial court—the prosecutor's statements were appropriate comments during closing argument and did not shift the burden to Jarrett to prove anything. The statements pointed to the fact that if H.K was going to fabricate the events of the sexual abuse, she could have done a better job. Also, the evidence disclosed no motive for H.K. to fabricate. In the prosecutor's statements, he did not affirmatively state or imply that the defendant had the burden to prove H.K. fabricated or had a motive to do so. As the evidence at trial disclosed, there were only two witnesses to the acts giving rise to the sexual abuse charges—H.K. and Jarrett. The verdict rested on who the jury believed was credible and telling the truth. The State's argument fell well within the bounds described in a jury instruction, which allowed the jury to consider a witness's interest in the trial, their

motive, candor, bias, and prejudice. It was logical for the prosecution to argue that H.K. did not fabricate and had no motive to do so in an attempt to convince the jury to accept her testimony. *See State v. Carey*, 709 N.W.2d 547, 555–59 (Iowa 2006) (finding no prosecutorial misconduct occurred when prosecutor emphasized victim's credibility by arguing "he doesn't have any motive in here to try to get this defendant convicted of any crime").

Since we conclude that there was no prosecutorial misconduct, we need not address the prejudice requirement. The trial court did not abuse its discretion in overruling Jarrett's objections during the State's final argument and rebuttal argument and in confirming those rulings in denying his post-trial motion for new trial.

IV. Conclusion.

Having addressed all of Jarrett's claims and finding them without merit, the verdicts and judgments are appropriately affirmed.

**AFFIRMED.**